**Lynne M. EVERS, Plaintiff-Appellant,**

v.

**EQUIFAX, INC., Defendant-Appellee.**

No. 80–7005.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 17, 1981.

Carr, Abney & Tabb, W. Pitts Carr, Charles B. Zirkle, Jr., Atlanta, Ga., for plaintiff-appellant.

Hansell, Post, Brandon & Dorsey, W. Rhett Tanner, Atlanta, Ga., for defendant-appellee.

Before JONES, TJOFLAT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant, Lynne M. Evers, appeals the award of a new trial to appellee, Equifax, Inc., claiming that the trial court was laboring under a misapprehension of the law and abused its discretion in granting the new trial. She asks this court to reinstate the jury verdict of the first trial, or alternatively, to order a remittitur on damages. We reject her arguments and affirm.

### FACTS

Evers brought suit against Equifax seeking damages and other relief under the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681, et seq. (1974). She alleged both negligent and willful violation of the Act. The evidence, as presented by Evers at the first trial, shows that when she applied for additional automobile insurance, she was informed that her existing insurance was being cancelled because of a credit problem. Taking several hours off work, Evers viewed her credit reports at both Equifax and another credit bureau.[1] The credit report at Equifax inaccurately stated that Evers' whereabouts was unknown and that she was not expected to return to her last known address. The report grossly understated Evers' net worth and annual income. The report also indicated erroneously that Evers' former landlord stated she had stolen some property from her apartment and would not be acceptable as a tenant. While at Equifax's offices, Evers informed Equifax of the inaccuracies in the report. When she returned to Equifax's offices the next day for a second meeting, she learned that the bulk of the erroneous information in the report had been corrected. Four days after she learned of the threatened cancellation of her insurance, Evers was informed that the problem had been resolved and her insurance would be reinstated.

The cause of the inaccuracies was disputed at trial. Equifax's version of the events was presented by its investigator and a general manager. The investigator testified that the request for an investigation of

---

1. The report at this other credit bureau was accurate.

Evers was handwritten by an employee of someone other than Equifax, presumably by an employee of the insurer. He read the handwritten address as an apartment complex at 3301 Roswell Road, when in reality Evers' address was an apartment complex at 3501 Roswell Road. The investigator went to 3301 Roswell Road where he interviewed the manager. The investigator claims the manager identified Evers as the former tenant in the apartment number given to the investigator and stated this tenant had taken some property from the apartment and would no longer be accepted as a tenant. The investigator admitted that he had no information regarding Evers' net worth or income, but had estimated these figures based on his experience of financial assets of individuals living in apartment complexes similar to the one where he had interviewed the manager. The general manager of Equifax testified that net worth and income figures are unimportant in credit reports to the automobile insurance industry. The investigator testified that he called businesses with names similar to Evers' employer, described in the form given to Equifax as "American C-o-1-1." Evers' employer's name is actually "American Fashion College." When Evers complained to Equifax, Equifax learned her correct address and employer. It quickly corrected its report on the basis of this information.

Evers' version as to the cause of the inaccuracies was based on the testimony of the apartment manager interviewed by Equifax's investigator. He testified that he had given the investigator the name of the tenant in the apartment inquired about, a name different from Evers. Equifax attacked this testimony by attempting to impugn the manager's memory of the events.

At the close of evidence in the first trial, the district court ruled that it would not submit to the jury Evers' claim for punitive damages pursuant to 15 U.S.C.A. § 1681n because of insufficient evidence to prove willfulness.[2] The court accordingly instructed the jury only on actual damages.[3] The jury returned a verdict for Evers in the amount of $9,100.

On Equifax's motion for a new trial or in the alternative remittitur, the district court granted Equifax a new trial. It found the jury's verdict to be excessive and punitive for three reasons: (1) the minimal loss of time from Evers' job, the minimal travel expenses to correct the report, and absence of evidence demonstrating any great emotional stress, worry, anxiety, injury to reputation or the like,[4] (2) two appeals by Evers' attorney in closing argument that the jury award sufficient damages to prevent a recurrence of similar incidents, despite the district court's ruling before closing argument that the claim for punitive damages would not be submitted to the jury and, despite the district court's admonishment to Evers' attorney after he made the first improper appeal, and (3) a query by the jury during deliberation as to whether they could consider damages in the form of court costs, attorney fees, and direct payment to Evers.[5]

During the course of the second trial, the same issue as to whether there was suffi-

---

**2.** 15 U.S.C.A. § 1681n (West 1974) reads in full:

Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

**3.** The Record on Appeal does not contain the instructions on liability given to the jury. Presumably, the case was submitted under Evers' claim that Equifax negligently failed to comply with the Fair Credit Reporting Act. See 15 U.S.C.A. § 1681o.

**4.** In her complaint, Evers requested actual damages "in the sum of $5,000 or in such other sum as determined by the trier of fact."

**5.** After consulting with counsel, the court informed the jury they could not consider damages in the form requested.

cient evidence on willfulness to submit Evers' punitive claim to the jury arose again. The district court, after a second look at the evidence, held that it was sufficient to submit the question to the jury. When Evers suggested that if the court was prepared to submit the punitive claim to the jury, it should reinstate the first verdict, the district court replied that it could not do so because of its inability to determine whether the jury had intended the damage award to be only for actual injury or to be split between actual injury and a punitive award. The case, together with Evers' punitive claim, went to the second jury which returned a verdict for Equifax.

## DISCUSSION

■ Evers does not challenge on this appeal any part of the second trial. Instead, she only attacks the propriety of the order granting the second trial. Appeal with respect to that order properly awaited entry of final judgment in the second trial. *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975); 11 Wright & Miller, *Federal Practice and Procedure*, § 2818 (1973).

Ascertaining what Evers is arguing on appeal has required diligent study of her briefs and oral argument. She in no way contests the second trial, but limits her arguments to the propriety of the grant of the new trial. It is unclear that her legal theories are always consistent with the relief she requests. We construe her position to challenge the grant of the new trial and to request a reinstatement of the first verdict. She asserts three grounds: (1) Evers

argues that the district court abused its discretion in granting the new trial, assuming arguendo that the first jury verdict was entirely for actual damages; (2) she argues that when a district court finds a verdict excessive, it may not order a new trial without conditioning same upon a refusal by the plaintiff of a remittitur; and (3) she argues that the district court erred at the first trial in refusing to submit the punitive damages issue to the jury and that this error somehow requires reinstatement of the first verdict.[6]

### I. Abuse of Discretion in Granting a New Trial.

■ The general rule is that a district court's denial or grant of a new trial is within its discretion and is ordinarily nonreviewable save for an abuse of that discretion or misapprehension of the law. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980); *Cruthirds v. RCI, Inc.*, 624 F.2d 632 (5th Cir. 1980); *Love v. Sessions*, 568 F.2d 357 (5th Cir. 1978); *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976); *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975). Qualifying this deference is a rule developed in recent cases in this circuit to protect a litigant's Seventh Amendment rights and to prevent improper intrusion on the jury's function. The rule is that a somewhat broader review applies to an order granting a new trial as opposed to an order denying such a motion, and the greatest degree of scrutiny is exercised when a new trial is granted on the ground

6. In her brief, Evers argues extensively that the district court erred in not submitting the punitive damages issue to the jury. While these arguments might be read as an appeal and a request that this court take corrective action with respect to this error, this position is not consistent with her statement of the issues or request that the first verdict be reinstated in its entirety. Instead, she pursues this point as a premise of her argument that the district court acted under a misapprehension of law, which in turn made erroneous in some way the order granting the new trial. She does not request that we order a new trial for the purpose of submitting the punitive damage issue to the

jury. If Evers were asking for a remand so that she could submit the punitive damage issue to the jury again, we would have to hold that she has already had such relief in the second trial which did submit the punitive damage issue to the jury. That jury returned a verdict for Equifax, in a trial which Evers has not attacked on appeal. At oral argument Evers' counsel acknowledged that the question of whether the punitive claim should be submitted to the jury was not before us for remedial action. Accordingly, we construe Evers' brief and arguments as an attempt to salvage what actual damages she can from the first trial.

that the verdict is against the weight of the evidence. *Love v. Sessions, supra; Massey v. Gulf Oil Corp., supra; Spurlin v. General Motors Corp., supra.* Nevertheless, the district court's discretionary power is still afforded the deference required by the trial judge's presence at the trial and his duty to see that there is no miscarriage of justice. *Love v. Sessions, supra.*

■ Evers argues that the verdict was not excessive, assuming arguendo that the verdict amount was entirely for actual damages. We cannot accept the assumption on which Evers' argument rests. Evers' attorney twice made an improper argument to the jury which placed the punitive damage claim before the jury in violation of the district court's ruling and admonishment. This closing argument together with the amount of the award, is sufficient evidence to justify the district court's conclusion that the jury awarded punitive damages as well as actual damages. We conclude that the district court did not abuse its discretion in granting a new trial on the ground that the jury improperly considered punitive damages in violation of the district court's ruling withdrawing that issue from the jury.

Moreover, we have reviewed the record and have concluded that the district court's decision that the damages were excessive, on the assumption they were for actual damages, was not an abuse of discretion. Evers brings to our attention a district court case with similar facts in which the district court refused to order a new trial on grounds that a verdict of $8,000 was excessive for actual, but no out-of-pocket, injury under the Fair Credit Reporting Act.

*Bryant v. TRW, Inc.,* 487 F.Supp. 1234 (E.D. Mich.1980). The existence of a similar case with a different result, though, is not conclusive of an abuse of discretion, even under the broader standard of review when a new trial is granted.

II. Remittitur Issue.

■ At oral argument, Evers argued that when a district court finds a verdict excessive, it may not order a new trial without conditioning the new trial on refusal by the plaintiff of a remittitur. No case has been cited to us, nor have we found any case which requires a district court judge to first offer remittitur before granting a new trial on the basis of an excessive verdict.[7] Professors Wright and Miller indicate that when a district court believes a verdict is excessive, it *may* condition a denial of a new trial on the plaintiff's filing a remittitur of a stated amount. 11 Wright & Miller, *Federal Practice & Procedure,* § 2815 (1973). Professor Moore indicates that a court may unconditionally require a new trial without remittitur when it concludes the verdict is excessive, since remittitur is discretionary with the trial court. 6A J. Moore, *Federal Practice* ¶ 59.05[3], n.3 (2d ed. 1979); *see also Glazer v. Glazer,* 274 F.Supp. 471 (E.D.La.).[8]

■ Moreover, we read the district court's order granting the new trial as indicating concern that the jury's finding of liability, in addition to the finding concerning damages, was affected by improper considerations. The district court noted that the verdict was not only excessive, but also punitive. It concluded that the request by

---

**7.** Evers mistakenly cites *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir. 1980); *Cruthirds v. RCI, Inc.,* 624 F.2d 632 (5th Cir. 1980), and *Love v. Sessions,* 568 F.2d 357 (5th Cir. 1978), in her argument. In *Lowe v. General Motors Corp.,* in relying on dicta in a district court's order indicating it would have ordered a new trial for excessiveness or remittitur, we remanded for consideration of what remittitur if any would be appropriate. We in no way indicated that our action was grounded in a holding that a district court must grant a remittitur before ordering a new trial. *Cruthirds v. RCI, Inc.* and *Love v. Sessions,* both dealt only

with an order for a new trial because the verdict was against the great weight of the evidence, and not with an order for a new trial for excessive verdict. Accordingly, the use of remittitur in those cases was inappropriate.

**8.** Whether there is ever a reason for an appellate court to find an abuse because of a district court's failure to order only a remittitur is a question we need not address at this time in light of our agreement, discussed below, with the district court that there is reason to believe the finding of liability here was affected by improper considerations as well.

the jury as to whether it could consider damages in the form of court costs and attorney's fees, "considered with the amount of the verdict, is an indication of the punitive nature of the verdict." Finally, the district court noted that the damages awarded were more than 180 times the proven lost wages and automobile travel expenses. The rule with respect to remittiturs is that the court must be satisfied that the verdict properly established liability, and that if the verdict concerning liability is the result of passion, prejudice, compromise, prejudicial error, or some other misconduct, then the trial court should order a complete new trial. *Lowe v. General Motors Corp.*, 624 F.2d 1373 (5th Cir. 1980); *International Paper Co. v. Busby*, 182 F.2d 790 (5th Cir. 1950); 6A J. Moore, *Federal Practice* ¶ 59.-05[3], at 59–62 and ¶ 59.08[6] (2d ed. 1979); 11 Wright and Miller, *Federal Practice and Procedure*, § 2815 (1973). In the instant case, we conclude that the district court did not abuse its discretion in concluding that the verdict of liability itself was affected by improper considerations. Evers' attorney made two improper appeals to the jury, which returned a verdict of over 180 times Evers' lost wages and travel expenses, a verdict almost twice the amount specified by Evers in her complaint. Evers suffered minimal mental anguish. Impropriety may be inferred from excessiveness or inadequacy of a verdict amount. *Legler v. Kennington-Saenger Theatres, Inc.*, 172 F.2d 982 (5th Cir. 1949). Here, there is, in addition to excessiveness, the appeal by Evers' attorney and the note from the jury during deliberations suggesting its desire not to adhere to the district court's instruction regarding actual damages.

### III. Effect of Failure to Submit Punitive Damages Issue to Jury.

Evers' final argument is that because the district court was under a misapprehension concerning the sufficiency of the evidence on the punitive damages claim, this is reason enough to reinstate the first verdict. For the purposes of this argument, we assume, as the district court did conclude in the second trial, that the evidence presented by Evers was sufficient to preclude what in effect was a directed verdict on the punitive damages issue in the first trial.[9] Accordingly, we assume that the district court did commit an error of law in refusing to submit the issue to the first jury. Our task is to determine whether such a misapprehension requires reversal of the grant of a new trial. Ordinarily, of course, a party who seeks to sustain a verdict does not assert, and will not be heard to assert, arguments indicating that there are errors in the verdict. Evers' argument is novel, but clearly unacceptable.[10] Evers argues that, had the district court given the proper instruction relating to punitive damages, the verdict amount could be sustained. Evers, in effect, invites us to establish as a rule of law that when a district court fails to submit an issue (punitive damages here) to the jury, and then vacates the verdict as excessive in light of the issues actually submitted (compensatory damages here), an appellate court may reinstate the verdict on the grounds that, had the proper issue been submitted, the verdict would have been proper. In other words, Evers argues that an appellate court can assume that a jury decided the case upon a theory (punitive damages here) which should have been submitted to the jury, but in fact was not, and

---

9. In the court below, a hotly contested issue was whether 15 U.S.C.A. § 1681n authorized the submission of a punitive damages claim to the jury or whether such an issue was properly the province of the court. For the purposes of this appeal, we assume the evidence was sufficient to require a finding on the punitive damages claim, whether such finding be by the court or the jury. We express no opinion as to who properly should make this determination. *See Collins v. Retail Credit Co.*, 410 F.Supp. 924 (E.D.Mich.1977).

10. Compare other cases where a district court's order of new trial was reversed for misapprehension of the law where the misapprehension clearly resulted in prejudice to the party aggrieved. *Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), *cert. denied*, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954) (mistaken belief of district court that it had no jurisdiction in first trial).

that an appellate court can assume that a jury followed instructions which should have been given, but in fact were not. We refuse to establish such a rule since it requires an assumption that the jury understood the law better than the judge, and followed instructions that were never given. Such an assumption is unrealistic.[11]

AFFIRMED.

11. Insofar as Evers is arguing that, had the district court known the punitive damages claim should have been submitted to the jury at the time of its order, it would not have exercised its discretion to grant a new trial, we refuse to indulge in such speculation. Moreover, the district court later realized there was sufficient evidence to support a finding of willfulness necessary to award punitive damages, but still refused to reinstate the first verdict.