**Edward R. DALTON, Plaintiff-Appellant,**

**Administrators of the Tulane Education Fund, d/b/a Tulane Medical Center Hospital and Clinic, Intervenor,**

v.

**TOYOTA MOTOR SALES, INC., Defendant-Appellee.**

No. 81–3768.

United States Court of Appeals, Fifth Circuit.

April 18, 1983.
Rehearing Denied June 3, 1983.

E. Grady Jolly, Circuit Judge, concurred specially and filed opinion.

Klein & Rouse, Henry L. Klein, Gary J. Rouse, New Orleans, La., for plaintiff-appellant.

Bernard, Cassisa, Babst & Saporito, Jerry L. Saporito, Metairie, La., for defendant-appellee.

Before WILLIAMS and JOLLY, Circuit Judges, and WILL *, District Judge.

WILL, District Judge:

This case involves an automobile allegedly unsafe at *no* speed. The facts are that the plaintiff, Edward Dalton (Dalton), after leaving an office Christmas party on Christmas Eve, December 24, 1978, drove his 1978 Toyota Corolla from his office in Mobile, Alabama, westward on Interstate 10 in the direction of New Orleans. He apparently became sleepy and pulled off the pavement onto the grassy median strip. Letting the engine idle (the weather was cold), he lit a cigarette and fell asleep. A passing motorist, Rodney Newman (Newman), noticed flames around the car and attempted to pull Dalton out. On the third attempt, he was successful. According to Newman, the inside of Dalton's car was filled with smoke but contained no fire during his first two, unsuccessful attempts to pull Dalton out of the car. Newman testified that during his third and successful attempt, the vinyl or plastic "headliner" of the car (*i.e.,* the top of the inside of the car) began to melt and caught fire. The fire caught the top of Dalton's head as Newman pulled him from the car. Newman also testified that the back seat of the car also caught fire during his third attempt to pull Dalton out of the car, but that the front seat was not on fire at that time. According to Newman, Dalton was burned further when he (Dalton) fell in the burning grass three or four feet

from the car. Newman was also burned while rescuing Dalton.

Dalton remembered nothing of the fire, his rescue or any other of the events between the time he fell asleep and the time he woke up in the Gulfport Memorial Hospital with second and third degree burns on his head, face, hands and arms. He filed this action in 1979 in the Eastern District of Louisiana against Toyota Motor Sales, U.S.A., Inc. (Toyota). The case was tried to a jury in March 1981. Both at the close of the plaintiff's case and at the conclusion of all the evidence, Toyota moved for dismissal of the case or a directed verdict. The trial judge submitted the case to the jury, which returned a verdict of $250,000 for the plaintiff. The court entered a judgment for the plaintiff on the jury's verdict. Toyota then filed motions either for judgment notwithstanding the verdict or for a new trial. A hearing was held on the motions in April 1981, and in November 1981 the trial judge, with an opinion, granted the defendant's motion for a judgment notwithstanding the verdict and, alternatively, the motion for a new trial. For the reasons which follow, we reverse and remand with directions to enter a judgment on the jury's verdict, 526 F.Supp. 575.

In granting the defendant's motions, the court found that Dalton had failed to establish by competent evidence either of his two contentions: (1) that the catalytic converter (an emission control device) was improperly designed, which defect caused the fire, and (2) that the Toyota owner's manual contained insufficient warnings with respect to the dangers involved in parking the car over combustible materials with the engine running. That warning, which is contained in the Owner's Manual, and which Dalton acknowledged he had not read, states:

> The catalytic converter is an emission control device installed in the exhaust system. It is installed only on Corolla's sold in the U.S.A.
>
> The catalytic converter looks somewhat like a muffler, but it performs an important job in maintaining cleaner air.

---

* District Judge of the Northern District of Illinois, sitting by designation.

If a large amount of unburned gasoline flows into the converter, it may overheat and create a fire hazard. To prevent this, observe the following precautions:

Do not drive with an extremely low fuel level. This may cause engine misfire which creates an extra load for the converter.

Do not allow the engine to run at fast idle speed for more than ten minutes or at normal idle speed for more than twenty minutes.

Do not park the car over dry grass or over anything that might burn easily.

Do not turn off the ignition while the car is moving.

Toyota Owner's Manual, Section 1, page 1.

The court found that the plaintiff's expert, George Pappas (Pappas), was not qualified to express an opinion on the adequacy or inadequacy of catalytic converter designs and qualified as an expert only "in the field of engineering and fire investigation." In any event, the court found that Pappas testified only that the skin temperature of the catalytic converter was about 1800 degrees Fahrenheit when in operation and that the fire did not originate within the car.

With respect to the adequacy of the warnings, the court found that the plaintiff had "introduced no evidence relating to industry standards of adequate warnings." It further found that "No guidelines were presented indicative of a more effective warning—either hypothetical or actually utilized."

The record, however, reveals testimony adduced by Dalton's counsel from Pappas and others that the catalytic converter would normally get so hot that at night you could see it glow and radiate. On the vehicle in question, it was installed just forward of the rear wheels about 5¾ inches off the ground. A heat shield was installed on top of the converter between it and the floorboard of the car but none was installed below the converter. The plaintiff's expert also testified that he was aware of two safety features which are used on other makes of cars to protect motorists, neither of which was installed on Dalton's Toyota. One was a heat shield installed underneath the catalytic converter between it and the ground. The other was a thermosensor which would detect heat build-up in the catalytic converter and either turn off the motor or stop the operation of the converter by stopping the flow of air to it. Plaintiff's counsel also adduced evidence that Toyota models for the years 1975 through 1977 provided a dashboard warning light to advise of overheating of the catalytic converter which would not only warn an owner-user of actual overheating but be a remainder of the possibility of the converter overheating.

With respect to the adequate warnings, plaintiff's counsel introduced evidence of warnings contained in other owner's manuals for automobiles equipped with catalytic converters.

Plaintiff's expert, Pappas, testified that in his opinion, "the fire started underneath the vehicle as a result of high intense heat, radiating from the catalytic converter, which caused combustible material under the vehicle, like grass to burn, and in addition cause [sic] heat by conduction to raise the temperature inside the passenger compartment." He testified categorically that in his opinion the fire "did not start inside the compartment" but that "the fire started under the car." This, of course, was consistent with the testimony of the only eyewitness, Newman.

Cross-examination of one of Toyota's experts, Jack Parcells (Parcells), an expert in emission control systems and exhaust systems, disclosed that Datsun and Mazda both utilized sensor relays connected to dashboard warning lights and that Toyota had removed the warning light from its 1978 models and substituted a pressure sensitive switch which under certain operating conditions would shut off the supply of air to the catalytic converter and diminish or stop its operation.

The plaintiff also introduced medical evidence as to the location and extent of his burns. Dr. George W. Byrne (Dr. Byrne)

testified that when he examined Dalton in Gulfport Memorial Hospital, he found acute burns on Dalton's face, upper neck, forehead, scalp, both upper extremities, right arm and shoulder and back of left hand, but no burns on his feet, ankles, legs, calves, thighs or buttocks. This burn pattern, plaintiff contended, was consistent with Newman's testimony that the fire did not originate in the car but in the grass and was inconsistent with defendant's theory that the fire started within the car from Dalton's cigarette. Dr. Byrne also testified that the burns were not "the smouldering type" but were "acute" from contact with flames.

The defendant presented expert testimony by a fire investigator, Antone P. Jasich (Jasich), who, although acknowledging that the grass underneath the car would have been ignitable, expressed the opinion that the fire had started in the vehicle and not in the grass under the car. Based on his tests, he concluded that there was not enough heat radiating from the converter to ignite the grass, that the converter was not unreasonably dangerous and met all federal motor vehicle safety standards.

As previously indicated, plaintiff alleged in his complaint that Toyota was guilty of negligence and breach of warranty in that the design of the car, particularly the design of the catalytic converter, was defective and that the warning given to owners and users was inadequate. These are traditional negligence tort and breach of contract allegations. The trial judge found that the plaintiff had failed to carry his burden of proof as to either the negligence of the design of the catalytic converter or the inadequacy of the warning.

This is not, however, a traditional negligent tort or breach of warranty action but a product liability case. We will endeavor to analyze and deal with it as such.

■ The Louisiana law with respect to products liability, both parties agree, is set forth in *Weber v. Fidelity & Casualty In-*surance Co. of New York, 259 La. 599, 250 So.2d 754 (1971).[1] *See also Chappuis v. Sears Roebuck & Co.,* 358 So.2d 926 (La. 1978); *Melancon v. Western Auto Supply Co.,* 628 F.2d 395 (5th Cir.1980); *Soileau v. Ford Motor Co.,* 639 F.2d 214 (5th Cir.1981); *Poland v. Beaird-Poulan,* 483 F.Supp. 1256 (W.D.La.1980). In *Weber,* the court held that a "plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect." *Weber, supra,* 250 So.2d at 755.

■ The applicable law with respect to the criteria to be followed in ruling on motions for judgment notwithstanding a jury's verdict is set forth in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc). This Court there held that, while the trial court should consider all of the evidence favorable to both sides, it should do so "in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Shipman,* 411 F.2d at 374. If there is substantial evidence opposed to the motion, *i.e.,* evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. It should be granted only if the evidence points so strongly and overwhelmingly in favor of the moving party that the court believes reasonable persons could not arrive at a contrary verdict. Finally, the Court pointed out that (p. 375) "it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."

■ Applying the *Weber* standard for determining product liability and the *Boeing v. Shipman* standard for determining when to grant a motion for judgment notwithstanding a jury's verdict, we conclude that the trial judge erroneously set aside

1. It is noteworthy that the late Judge Gordon, an outstanding and well-respected trial judge, in his opinion setting aside the jury's verdict makes no reference to *Weber* although referring to this Court's decision in *Soileau.*

the jury's verdict. There certainly was evidence before the jury on the basis of which, particularly if weighed most favorably to the party opposed to the motion (plaintiff), reasonable and fair-minded persons could have reached different conclusions. Indeed, here they could have concluded, as they apparently did, that the absence of a heat shield under the catalytic converter or the absence of a thermosensor which would effectively turn off the catalytic converter if it reached a critical heat level made Dalton's 1978 Toyota Corolla "unreasonably unsafe." That a potentially dangerous condition existed is reflected by the manufacturer's recognition in the Owner's Manual that the converter, under certain conditions, "may overheat and create a fire hazard." There follow instructions not to drive with an extremely low fuel level, not to allow the engine to run at fast idle speed for more than ten minutes or at normal idle speed for more than twenty minutes, not to park the car over dry grass or over anything that might burn easily or to turn off the ignition while the car is moving.

There equally was evidence before the jury from which it could have found that the catalytic converter was the proximate cause of the plaintiff's injuries. The only eyewitness, Newman, testified that there was fire around the car when he arrived and smoke but no fire inside. That testimony was consistent with the testimony of plaintiff's expert, Pappas, who concluded that the overheated catalytic converter had ignited material, grass or other combustible material, under the car and only later had the car been set on fire. It was also consistent with the medical testimony that Dalton's second and third degree burns were all on the upper part of his body and on his arms.

There has been no suggestion that Dalton's use of the car was abnormal and no contention to that effect has been made by defendant. It follows then that the jury, based on the evidence before it, could reasonably have found that Dalton's car was unreasonably dangerous in normal use and that the dangerous condition was the cause of the fire and, therefore, Dalton's injuries.

There remains the issue of whether the defendant adequately notified owners or took other adequate steps to prevent owners and users from being injured as a result of the potentially dangerous condition. Again, there was evidence from which the jury could reasonably have found that the notice in the Owner's Manual was inadequate and that Toyota had not taken reasonable and available steps to protect owners and users from injury.[2] That evidence included the use of dashboard warning lights, as on earlier models of Toyotas as well as on other makes, to warn of an overheated condition and to serve as a periodic reminder of the potential danger of an overheated catalytic converter. It also included evidence of the use by other manufacturers of heat shields under the converter or of thermosensors to shut off catalytic converters if they became overheated.

There was, of course, substantial conflicting evidence from which the jury could have concluded that the catalytic converter, though obviously potentially dangerous as the Owner's Manual pointed out, was not unreasonably dangerous or the cause of Dalton's burns and that the fire had started inside not outside the car. The jury might also have found that Toyota in its Owner's Manual had taken reasonable steps to warn owners and users of the potentially dangerous condition and thus to protect them from injury from fire caused by the catalytic converter.

Applying the *Boeing v. Shipman* criteria, *i.e.,* considering all the evidence with all reasonable inferences most favorable to the party opposed to the motion, it is clear that reasonable and fair-minded persons might, in the exercise of impartial judgment, reach different conclusions from all the evidence.

---

**2.** The jury might, for example, reasonably have concluded that owners and particularly users either do not normally read Owner's Manuals or remember what they do read and that, therefore, a warning in the manual was inadequate to protect against such a potentially dangerous condition.

That describes a classic case for jury determination. Under the circumstances, it being the function of the jury to weigh conflicting evidence and inferences, and to determine the credibility of witnesses, its verdict should not have been set aside.

This obviously is not a case where the facts and inferences point so strongly in favor of Toyota that reasonable persons could not arrive at a contrary verdict, the only circumstances under which granting of the motion for judgment n.o.v. would have been warranted. The verdict was clearly within the jury's discretion and should not have been vacated.

Accordingly, the judgment for the defendant notwithstanding the jury's verdict for the plaintiff is reversed and the case remanded with instructions to reinstate the jury's verdict.

REVERSED AND REMANDED with instructions to reinstate the jury's verdict.

E. GRADY JOLLY, Circuit Judge, concurring:

While the evidence adduced supports the jury's verdict with respect to the cause of the fire, *i.e.*, the catalytic converter, I do have concerns about the lack of evidence dealing with the alleged inadequacy of the warning contained in the owner's manual. These concerns are heightened by the weakness of the plaintiff's case with respect to an inherently defective design in the automobile, that is, the placement of the catalytic converter and the failure to provide safety features which could have prevented the fire. The plaintiff's case was nonexistent with respect to the defective nature of the catalytic converter itself. Where, as here, minimum evidence of inherent defectiveness of the product is presented, a lesser warning may be held adequate than in cases where the proof of defectiveness, and hence dangerousness, of the product is greater.

The modesty of the evidence on defectiveness underscores my concern regarding the dearth of evidence adduced by the plaintiff as to the adequacy of the warning. This was an important basis for Judge Gordon's J.N.O.V. ruling. In his Memorandum and Order, Judge Gordon discussed the fact that the plaintiff's theory of inadequate warning was devoid "of even self-serving testimony." Judge Gordon held that the evidence regarding the adequacy of warning failed to present a question which appropriately would go to the jury. Essentially, Judge Gordon held that the absence of evidence regarding accepted standards relating to the adequacy of warnings made it impossible for the jury to arrive at any sound determination concerning the warning in this case.

An examination of the case does indeed show very little evidence from which the jury could compare the level of danger involved with the catalytic converter to the adequacy of the warning. As set forth in the Restatement (Second) of Torts § 388 at 308–10 (1965), the duty to warn increases as the potential danger connected with the product increases. Rather than presenting testimony bearing on the duty to provide a warning commensurate with the degree of danger presented, the plaintiff did little here other than point out the fact that the warning was contained in the owner's manual and that no other warning was provided to him.

Notwithstanding my dissatisfaction with the state of the record on this issue, I am not prepared to say that there was insufficient evidence for the jury in its common sense to say that the warning in the owner's manual was inadequate in apprising the user of the dangerous nature of the placement of the catalytic converter. As established in *Boeing v. Shipman,* we are to view all of the evidence in the light most favorable to the party opposing the J.N.O.V. motion. Viewed thus, it does appear that "reasonable and fair-minded men in the exercise of impartial judgment [could have] reach[ed] different conclusions ...." 411 F.2d at 374. The granting of the motion thus was in error.

I therefore concur in the result reached by the majority opinion.