Keith KNIGHT, Plaintiff-Appellee,

v.

TEXACO, INC., Defendant-Appellant.

No. 85–3354.

United States Court of Appeals,
Fifth Circuit.

April 16, 1986.

John R. Peters, Jr., Jones, Walker, Waechter, etc., New Orleans, for defendant-appellant.

Michael P. Pellegrin, Houma, Edward C. Alker, Metairie, for plaintiff-appellee.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

Texaco appeals the district court's judgment of $823,863 in favor of a Jones Act plaintiff on the ground that damages remain excessive after remittitur. Finding sufficient support in the record for the award, we conclude that a reasonable trier of fact could make the award and affirm.

## I. BACKGROUND

Twenty-three year old Keith Knight was working as a roustabout on Texaco's submersible drilling barge MATAGORDA BAY on July 29, 1980 when a movable steel beam came loose and crushed his left foot. Knight was hospitalized for a week to stabilize the wound and was unable to put his weight on the foot for three months. In December 1980, he returned to work for Texaco in the capacity of "temporary mechanic I," a position which involved repairing and maintaining small "jo boat" engines and light generators. In April 1982, Texaco scheduled Knight's mechanic job for elimination and decided to return him to roustabout work. Two foot specialists, Drs. Cenac and Bordelon, determined that surgery was required to correct a nerve disorder and bone dislocation before Knight could resume roustabout work. With physician's restrictions, Knight returned to work in November 1982.

In September 1982, Knight brought this personal injury suit against Texaco on theories of unseaworthiness and Jones Act negligence. The jury found Texaco liable on both theories and returned a verdict of $1,000,000. The district court initially entered judgment on the jury's verdict. Texaco did not contest the jury's findings on liability, but moved alternatively for judgment notwithstanding the verdict, new trial, or remittitur on the ground that the damage award was excessive. The district court denied Texaco's motion for judgment n.o.v., but found the verdict excessive and gave Knight the option of remitting his award down to $823,863 or submitting to a new trial. Knight chose remittitur and the district court entered judgment in his favor for $823,863. Texaco appeals, arguing that the district court erred in denying its motions for judgment n.o.v. and new trial and in granting too small a remittitur.

## II. DISCUSSION

### A. *Motion for Judgment Notwithstanding the Verdict*

Texaco first argues that the district court erred in denying its motion for judgment n.o.v. In reviewing a denial of judgment n.o.v., we must look at all the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

> [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.... [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of the witnesses.

*Id.* In other words, a district court should deny a motion for judgment n.o.v. unless the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *See Dalton v. Toyota Motor Sales, Inc.*, 703 F.2d 137, 140 (5th Cir.1983).

Following the *Boeing* mandate, it is clear that the district court properly denied Texaco's motion for judgment n.o.v. The thrust of Texaco's argument is that Knight could not show any future lost earnings because Texaco was paying him at a higher hourly rate on the date of trial than on the date of the accident. Knight, however, offered evidence that Texaco had scheduled his mechanic job for elimination and was just keeping him on until after trial. Michael Pitre, a personnel representative for

Texaco, testified that Texaco had scheduled Knight's jo boat mechanic job for elimination and had eliminated the position in other Texaco fields. Dr. Craig Feldbaum, a vocational rehabilitative psychologist, testified that Knight would earn substantially less on the open labor market than Texaco was paying him due to the physical limitations caused by his foot injury. The district court accurately noted: "Each party interpreted plaintiff's situation differently ... Both parties advanced their respective theories to the jury. The jury evidently choose [sic] to accept plaintiff's theory." Because Knight offered substantial evidence that he would suffer future lost earnings, the district court properly denied Texaco's motion for judgment n.o.v.

### B. *Motion for New Trial on Damages*

Texaco next argues that the district court erred by denying its motion for new trial on damages.[1] We recently reiterated the appropriate standard to review a district court's ruling on a motion for new trial: "The decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or misapprehension of the law." *Dixon v. International Harvester Company*, 754 F.2d 573, 586 (5th Cir.1985) (citing *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982); *Evers v. Equifax, Inc.*, 650 F.2d 793, 796 (5th Cir. 1981)). We also pointed out that "[t]his deferential standard of review applies especially in cases in which motions for new trials have been denied." *Id.* (citing *Shows*, 671 F.2d at 930; *Evers*, 650 F.2d at 796). This is so because

[d]eference to the trial judge, who has had an opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact.

*Shows*, 671 F.2d at 930 (citations omitted).

 As we noted above, Knight introduced evidence from which the jury could have reasonably concluded that he would suffer significant lost earnings in the future. Moreover, as will be discussed below, the record also supports a substantial award for Knight's physical pain, suffering, and disability. Under these circumstances, we cannot say that the district court abused its discretion in denying Texaco's motion for new trial.[2]

### C. *Remittitur*

 Finally, Texaco attacks the damage award as excessive by arguing that the district court erred in granting too small a remittitur. The rule is firmly established in this Circuit that this Court will not reverse a jury verdict for excessiveness except on the strongest of showings. *Dixon*, 754 F.2d at 590; *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983); *Shows*, 671 F.2d at 934. In addition, where, as here, "the trial court already has invoked its discretion in granting a remittitur, our scope of review is even narrower than usual." *Stapleton v. Kawasaki Heavy Industries, Ltd.*, 608 F.2d 571, 574 n. 7 (5th Cir.1979), *modified on other grounds*, 612 F.2d 905 (5th Cir.1980); *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2820, at 135–36 (1973). Our duty is to review the record to determine whether the damage award after remittitur exceeds the maximum amount

---

**1.** The district court initially granted Texaco's motion for new trial conditioned on Knight's rejection of remittitur. When Knight consented to the remittitur, the district court denied Texaco's motion for new trial.

**2.** Texaco also argues that it is entitled to a new trial because the jury returned a $1,000,000 verdict shortly after the district court refused its request for charts used by both counsel in clos-

ing argument. Texaco acknowledges that the court properly denied the request because the charts were not in evidence, but suggests that the jury may have been outraged by the denial of its request. We will not upset a verdict on the basis of such speculation. *See Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.*, 666 F.2d 1348, 1351 (10th Cir.1981).

that the trier of fact could have properly awarded.

Although the jury returned a lump sum verdict of $1,000,000, the district court dissected the award into component parts. It determined that the evidence supported figures of $27,939 for past lost wages, $495,924 for future lost wages, and $300,000 for pain, suffering, and disability and arrived at a total award of $823,863. Texaco argues that the maximum award a jury could have properly awarded is in the neighborhood of $200,000 to $250,000.[3]

■ Knight called an economist, Dr. George Rice, to forecast his future lost wages. Dr. Rice testified that had Knight not been injured, the present value of Knight's earnings over his 32 work-life expectancy would total $934,570. Dr. Rice started with a $13.06 per hour wage rate, figured a 1.5% annual growth or productivity rate, used a 3% below-market discount rate in accordance with *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984), and made adjustments for income taxes.[4] Dr. Rice also testified that, in light of Knight's injury, the present value of his earnings over the next 32 years would total $438,646. Dr. Rice based this calculation on the $8 per hour wage rate that Dr. Feldbaum testified Knight could command on the open labor market. He testified that the difference between the two figures was $495,924.

Texaco did not call an economist to testify as to Knight's future lost wages. Rather, it challenged Dr. Rice's methodology on cross-examination and continues to do so here. First, Texaco argues that there is no support in the record for Dr. Rice's use of a $13.06 hourly wage rate figure. Dr. Feldbaum conducted a labor market survey and testified that major oil companies paid roustabouts as much as $13.06 per hour. In addition, Danny Doucet, a roustabout for Texaco, testified that he was earning $13.01 per hour.

Next, Texaco disputes Dr. Rice's use of a 3% below-market discount rate. Dr. Rice explained that he arrived at his 3% rate by assuming an interest rate of 9.5% and an inflation rate of 6.5%. Dr. Rice did acknowledge on cross examination that there was a period of time when 30 year bonds yielded 13.3%, and Texaco thus argues that Dr. Rice should have used a below-market discount rate of 6.3% to 8.3%. We noted in *Culver II* that parties may introduce expert opinion on the appropriate below-market discount rate if they are unable to stipulate to one. 722 F.2d at 122. Here, Knight did have an economist testify that a 3% rate was appropriate and explained the figures he used to arrive at this rate. The jury could reasonably rely on his figure. We additionally note that Dr. Rice's rate is within the 3% to –1.5% range recognized in *Culver II* as established by studies over fairly lengthy periods. 722 F.2d at 121. Because there is record support for Dr. Rice's $13.06 hourly wage rate figure and his 3% below-market discount rate, we, like the district court, conclude that a reasonable jury could determine on the evidence before it that Knight will suffer $495,924 in future lost wages.

■ Texaco also argues that an award of $300,000 for pain, suffering, and disability is shocking to the conscience. As we noted in *Caldarera*,

[w]e have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption,

---

3. Although Texaco would prefer a figure of $19,000 for past lost wages, it does not seriously contest the $27,939 figure. Moreover, we find sufficient evidence in the record to support it.

4. We note that Knight was making his way up the ladder of success at the time of his injury. Texaco acknowledges in brief that "the facts uncontrovertibly show that the Plaintiff's wage scale continued to improve."

or other improper motive," or as "clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to."

705 F.2d at 784 (citations omitted & emphasis in original). While reassessment of a pain and suffering award "is inherently subjective in large part, involving the interplay of experience and emotions as well as calculation," *id.*, we recognize that "the touchstone must be the facts in the record in the individual case." *In re Air Crash Disaster Near New Orleans, La.,* 767 F.2d 1151, 1156 (5th Cir.1985).

The evidence shows that Knight suffered fractures of the second and third metatarsals and that these fractures caused the fourth metatarsal to poke down toward the bottom of his foot. He also suffered a break in his arch and a crushing injury to all the soft tissue in the front of the foot, including tendons, ligaments, and blood vessels. In June 1982, Knight underwent surgery to correct a nerve disorder and bone displacement in his foot. Knight established through medical testimony that he has suffered a 35–40% permanent disability in his left foot. He testified that his injury was very painful and that he cannot stand for more than 3 or 4 hours at time without suffering from soreness, swelling, and burning sensations in his left foot. Doctors testified that arthritis is already developing in Knight's left foot, that the arthritis will get worse, and that there will be more pain and disability. In light of this evidence and the district court's opportunity to observe Knight's condition, *see Sosa v. M/V Lago Izabal,* 736 F.2d 1028, 1035 (5th Cir.1984), we cannot say that $300,000 to compensate Knight for his pain, suffering, and disability shocks our conscience or exceeds the maximum amount that a reasonable jury could have awarded.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment in favor of Knight in the amount of $823,863 is AFFIRMED.