125 N.J. Super. 224 (1973)
310 A.2d 106
CAROL D'ARIENZO AND ARTHUR D'ARIENZO, PLAINTIFFS,
v.
CLAIROL, INC., A CORPORATION, JAMES WHOLESALE DRUG CO., INC., AND VALLEY FAIR OF IRVINGTON, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 21, 1973.
*226 Mr. Lance A. Posner for plaintiffs (Messrs. Brach, Eichler, Rosenberg & Silver, attorneys).
Mr. Saul A. Wolfe for defendants (Messrs. Skoloff & Wolfe, attorneys).
ACKERMAN, HAROLD A., J.S.C.
This action is a products liability case. On May 27, 1970 plaintiff Carol D'Arienzo applied a product known as Miss Clairol Shampoo Formula Hair Coloring No. 44S Coppertone to her hair and scalp. As a result, she suffered damage to her hair and injuries to her scalp and face. Because of the alleged negligence and breach of express and implied warranties on the part of the defendants, plaintiffs seek damages. The matter is before the court on a motion for summary judgment in which defendants Clairol, Inc. and James Wholesale Drug Co., Inc. seek judgment in their favor based upon the alleged contributory negligence of plaintiff Carol D'Arienzo.
The allegation of contributory negligence is bottomed on plaintiff's failure to perform the preliminary patch test as set forth in the directions for use of the product. The directions require that the test be performed before each application of the product. The gravamen of this charge is that but for this failure to perform the test no injuries *227 would have been sustained since, had she performed the test, she would have discovered her sensitivity to the product and refrained from using it. The proofs reveal that plaintiff had first used Miss Clairol some two years prior to the subject incident and that use continued intermittently during the intervening period. Immediately prior to using the product the first time, she performed the patch test and the reaction was negative. She suffered no adverse effects from the product during the entire period of use until the time of the subject incident.
The instant case presents a novel question of whether the defense of contributory negligence may be asserted to summarily preclude the prosecution of a suit involving an allergic consumer who relied on her personal history with a product in failing to perform a preliminary patch test. Inextricably intertwined with this question is that of whether the directions for the use of this product were of such a nature as to legally foreclose such reliance. Though the questions are novel and intriguing, determination of the issues must be made within the narrow framework in which they are here presented; that is, whether plaintiff's conduct so deviated from that of the ordinary prudent person that reasonable men could not disagree as to her negligence.
Initially, it must be noted that this defense is available in products liability cases under Maiorino v. Weco Products Co., 45 N.J. 570 (1965).
Simply stated, we are of the view that where a plaintiff acts or fails to act as a reasonably prudent man in connection with use of a warranted product or one which comes into his hands under circumstances imposing strict liability on the maker or vendor or lessor, and such conduct proximately contributes to his injury, he cannot recover. In short, in our judgment the well known principle of contributory negligence in its broad sense is sufficiently comprehensive to encompass all the variant notions expressed in the cited cases as a basis for refusing plaintiff a recovery when his own lack of reasonable care joined or concurred with the defect in the defendant's product as a proximate cause of the mishap and his injury. A manufacturer *228 or seller is entitled to expect a normal use of his product. The reach of the doctrine of strict liability in tort in favor of the consumer should not be extended so as to negate that expectation. [at 574]
At the same time, it is clear that this defense is sometimes barred where considerations of policy and justice dictate. Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 412 (1972); Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 473 (1969).
Since defendants seek summary judgment based upon the defense of contributory negligence, we would do well to examine these two notions so as to set forth the conceptual lines which circumscribe this form of relief. On the issue of summary judgment, the landmark case in New Jersey is Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954), wherein the court said that "it is the movant's burden to exclude any reasonable doubt as to the existence of any genuine issue of material fact." Similarly, our Supreme Court said in Ruvolo v. American Cas. Co., 39 N.J. 490 (1963):
It is a matter of common knowledge that such judgments are to be granted with extreme caution. The moving papers and the pleadings are to be considered most favorably to the party opposing the motion. All doubts are to be resolved against the movant. [at 499]
The defense of contributory negligence has found a similar footing in our law. Our courts have been loathe to take this question from the jury and declare a plaintiff's conduct contributorily negligent as a matter of law. Although a plethora of cases have been written covering this topic, perhaps the clearest expression of this judicial reluctance is found in Battaglia v. Norton, 16 N.J. 171 (1954). There the court said:
But contributory negligence is an affirmative defense to be proved; and ordinarily the issue is one for the fact-finding tribunal. Such is the case where different minds may reasonably come to different conclusions as to the facts or may reasonably disagree as to the inferences *229 derivable from the facts, controverted or uncontroverted. Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318 (1950); Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415 (1951); Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210 (1954). Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court. Care is to be taken that the reasonable man be not endowed with attributes which properly belong to a person of exceptional perspicuity and foresight. [at 179; emphasis added]
See also, Hickman v. Dutch Treat Restaurant, Inc., 3 N.J. 460, 465 (1950). On the closely related question of proximate cause, see Martin v. Bengue, Inc., 25 N.J. 359, 374 (1957), wherein the court held that questions of proximate and intervening cause are ordinarily jury questions.
It is manifest, then, that courts should exercise great caution and reluctance before terminating a plaintiff's cause at this early juncture. Yet, this legal approach should not automatically lead to the denial of summary judgment when contributory negligence is alleged. We must therefore analyze the instant case while paying due deference to the law already set forth herein.
Plaintiff's assertion that the directions did not lead her to understand that a patch test was required before each and every application compels us to consider whether the directions were adequate in light of all of the surrounding circumstances. The question has been posed in a leading treatise:
Directions are required to assure effective use, warning to assure safe use. It is clear from the better-reasoned cases that directions for use, which merely tell how to use the product, and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn. * * *
The issue is whether the totality of directions or cautionary language constituted an adequate warning in the light of the foreseeable use and user of the product. [Frumer and Friedman, Products Liability, § 8.05[1] at 186-186.6 (1973)]
It is undisputed that the label was in compliance with the applicable federal statute, 21 U.S.C.A. § 361 (a). However, *230 this statute establishes only minimum standards and is not meant to trench upon or consume the developing common law of products liability. Hubbard-Hall Chemical Co. v. Silverman, 340 F.2d 402, 405 (1 Cir.1965); Arata v. Tonegato, 152 Cal. App.2d 837, 314 P.2d 130, 134 (D. Ct. App. 1957); Rumsey v. Freeway Manor Minimax, 423 S.W.2d 387, 394 (Tex. Civ. App. 1968).
In the literature accompanying the product, reference to the patch test appears in two places. It appears under the bold print at the top of the page aside step number one, and it appears under the heading "BEFORE YOU COLOR  MAKE THESE TWO EASY TESTS." It is clear that these instructions direct the user to perform the patch test before each application. However, the question is not solely one of whether this directive is present, but rather whether the totality of the directions place the user on notice of the necessity and importance of the test and the possible consequences of nonperformance. As a leading case has indicated,
* * * a mere indication of danger, in and of itself, does not accomplish an inevitable tergiversation of liability. If warning of the danger is given and this warning is of a character reasonably calculated to bring home to the reasonably prudent person the nature and extent of the danger, it is sufficient to shift the risk of harm from the manufacturer to the user. To be of such character the warning must embody two characteristics: first, it must be in such form that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; secondly, the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person. [Spruill v. Boyle-Midway, Incorporated, 308 F.2d 79, 85 (4 Cir.1962)]
The court in the above matter went on to consider both the environment in which the product was used and the linguistic sufficiency of the warning, in order to determine the negligence of plaintiff. The court concluded that the question of the warning's sufficiency was properly left for *231 the jury, and that an insufficient warning was tantamount to no warning at all.
In Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A.2d 850, 160 A.L.R. 449 (1945), the Supreme Court of Pennsylvania dealt with a situation in which a woman died from the inhalation of fumes given off by the carbon tetrachloride contained in a product designated as "Atlantic Safety Clean." The can containing the product displayed the word "caution" and warned against using the product in places which were not well ventilated. However, the court felt that the conspicuous display of the words "Safety Clean" on all four sides of the can diluted the effect of the admonition. Again, it considered the conditions under which the product would be foreseeably used:
In fact, it is understandable that a woman busily engaged in the task of cleaning rugs might not take time to read everything on the can, particularly since the word "Safety" was so prominently featured as to exclude from her mind that "provident fear" which has been characterized as "the mother of safety." This court has laid down the rule that any one who is responsible for the existence of any dangerous instrumentality or substance with which persons are likely to come in contact must "impose a measure of control that is adequate to the protection of human beings" from it. [at 852]
The emerging principle from these authorities is that the duty to warn is not discharged by the mere presence of directions for use on the product, no matter how clear their meaning. The question is not properly one of clarity but of intensity sufficiently adequate to illuminate the mind of the reasonable user. The Supreme Court of Florida took this position when it stated: "Implicit in the duty to warn is the duty to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger." Tampa Drug Company v. Wait, 103 So.2d 603, 609, 75 A.L.R. 2d 765 (1958) (emphasis added). Again, the court held that the question of contributory negligence was properly left for the jury. See also, Williams v. Caterpillar Tractor Co., 149 So. *232 2d 898 (Fla. D. Ct. App. 1963), in which the court reached the same conclusion in a summary judgment setting. Additionally, see Muncy v. Magnolia Chemical Co., 437 S.W.2d 15, 19 (Tex. Civ. App. 1968), where the nonreading of the label by plaintiff was deemed to be inconsequential when the warning was insufficient.
In Arata v. Tonegato, supra, plaintiff, having been advised by her beautician of the necessity of a patch test to determine her sensitivity or allergy to Miss Clairol, nevertheless told defendant beautician to go ahead without performing the test. Her medical history revealed allergic propensities and she suffered extensive injuries. The trial court submitted the question of the adequacy of the warnings to the jury, who ultimately found for the defendants. And similarly, in Anderson v. Klix Chemical Co., 256 Or. 199, 472 P.2d 806, 810 (1970), the Supreme Court of Oregon concluded that questions such as the reasonableness of a warning are usually best left to a jury, despite the rather explicit and intensive warnings in that case.
Aside from Maiorino, supra, the only case relied upon by defendants in this motion is Shaw v. Calgon, Inc., 35 N.J. Super. 319 (App. Div. 1955). There, plaintiff reached blindly for a box of Calgon, but mistakenly picked up a box of Calgonite and proceeded to pour an unspecified amount into a pail of hot water. She sustained injuries after the solution came in contact with her forearms. Three things should be noted. First, plaintiff completely failed to read the directions and warnings. Second, the warnings said "[a]void contact of the hands with Calgonite solutions." It is readily apparent that the defendant did not contribute to the plaintiff's injuries. Finally, it is significant that plaintiff attempted to proceed by use of the principle of res ipsa loquitur. Thus, Shaw is patently inapposite and sheds no light on the instant case.
It is clear that the failure of a plaintiff to follow an adequate warning will ordinarily immunize the defendant *233 from liability. Restatement, Torts 2d, § 402A, comment (i) at 352 (1966); Procter & Gamble Manufacturing Co. v. Langley, 422 S.W.2d 773, 780 (Tex. Civ. App. 1967). That is, a consumer may not disregard or ignore plainly unambiguous instructions and then seek to hold manufacturers answerable for injuries sustained. However, while this only recites the obvious, that contributory negligence is available in a products liability case, it fails to disclose what constitutes contributory negligence in a particular factual complex.
The instructions for the use of the product involved herein were both directive and explanatory. Undeniably, they stated that the patch test must be performed before each application. This was their directive linguistic function. Additionally however, they explained the reason for this test. They indicated that "certain individuals" may be allergic or hypersensitive to the product, though it was "harmless to the multitude." Twice thereafter sensitive individuals were referred to under the rubric of "relatively few persons." This explains the requirement of the patch test and is inseparable from the directive passages.
We note the fact that, save for the use of the terms "allergic," "hypersensitive" and "unfavorable effect or result," no additional warning is given of any possible adverse consequences resulting from the use of the product. It is only in the course of the instructions for the performance of the patch test itself that the consumer is told, "* * * if any reddening of the skin, burning, itching, swelling, irritation, eruption or any other abnormal reaction is experienced in or around the test area, then the person is predisposed to the preparation and must not use it." Clearly, if the consumer was unconvinced of the necessity for the test, he might well not continue reading into the instructions themselves. Although we do not intimate any view as to whether the passage quoted above constitutes sufficient warning, its location in the directions could well preclude its being read. By then it could simply be too late.
*234 Much of the decisional and scholarly discussion of warnings on consumer products focuses on the ambience in which a product is to be used. This is because language and presentation which may be functionally effective in one setting, may prove ineffective in another. In a different setting Judge Learned Hand observed that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary * * *." Cabell v. Markham, 148 F.2d 737, 739 (2 Cir.1945). Thus, we are not, nor should we be, compelled to decide this matter based upon the mere existence of a particular directive in the instructions. In discussing this subject the leading article concluded:
These decisions demonstrate that the central issue in cases involving a failure to warn is not whether the user did or did not follow the directions for use, but rather, whether the manufacturer in labeling his product gave notice of all the dangers inherent in its foreseeable use, and if he did not, whether his failure to do so was the proximate cause of the injury. Such notice may be given in separate cautionary statements, or may be included in carefully worded directions. A clear, concise warning of potential danger, however, is required.

* * * * * * * *
"Whether or not a given warning is adequate depends upon the language used and the impression that it is calculated to make upon the mind of an average user of the product. Questions of display, syntax and emphasis are involved in evaluating a warning, or set of directions ..."
On questions such as these, a jury is best qualified to speak. [Dillord and Hart, "Product Liabilty: Directions for Use and the Duty to Warn," 41 Va. L. Rev. 145, 168-169 (1955) (footnote omitted)]
See also, Noel, "Products Defective Because of Inadequate Directions or Warnings," 23 S.W.L.J. 256 (1969).
It must be stressed that we do not suggest to eschew logic in dealing with the problems at hand. It might be that logic reveals no inconsistency or ambiguity in the directions. Rather, we recognize that the function of language is not only to express ideas accurately, but to communicate them *235 effectively. The touchstone must be the impression created by the directions or warnings on the average reasonable consumer.
A hair coloring product falls within that category of products which consumers perforce use repeatedly. In the present case plaintiff had used the product for two years and had, in fact, performed the patch test upon initially using it. Additionally, it is not the sort of product which one uses in the serene setting of the study wherein the directions can be scrutinized with unerring logic and attention. All of this is easily foreseeable from the vantage point of the manufacturers. Furthermore, the only dangers to which consumers were alerted were those broadly referred to as allergic or hypersensitive reactions. In the pertinent passages of the directions the possible reactions were described with no particularity of detail. Most significantly, it is the nature of an allergy that it is not always evident on first exposure or for several subsequent exposures (and thus the directive that the test be performed before each application). Plaintiff might have reasonably seen an inconsistency between her successful experience with the product and the requirement for continual patch tests. This fact is especially so in light of the disarming tone of the passage which explains the reason for the test, and the elusive nature of allergies.
The potential for allergy is acquired by a previous exposure to the offending substance. The first exposure, or exposures, sensitize the person so that upon a later exposure he will react adversely to the presence of the substance. During these "sensitizing" exposures, a particle of the substance called an "antigen" is introduced into the blood stream and is met by antibodies produced by the host in response to that foreign particle. In the normal situation, the antibodies would repel the antigen, since it is a harmless particle, and there would be no further consequences. In the case of allergy, however, the antigen is able to sensitize the antibody to the properties of the antigen. Upon re-exposure, the antibodies will resist the antigens to which they are sensitive and combine with them, liberating "histamine and other noxious chemicals that produce the symptoms *236 of allergic disease." [Schattman, "A Cause of Action for the Allergic Consumer," 8 Houston L. Rev. 827, 860 (1971) (footnotes omitted)]
Though the nature of the allergic response may be unknown to the average consumer, this is hardly esoteric knowledge within the community that manufactures these products. Indeed, in the very affidavit submitted in this matter by Dr. John T. McCarthy, medical director for Clairol, Inc., he states that:
The patch test is required prior to every application, because a user may develop a sensitivity to a particular chemical at the time of any particular use, and the patch test previews such sensitivity as may be related to repeated uses of the sensitizing agent. [emphasis added]
Surely, the meaning and purpose of the directions would be clarified by the insertion of a statement indicating that the reason for the continual tests is that allergies are, by their very nature, acquired, and that past success does not necessarily portend future success. And the import of such a statement would be strengthened by a timely warning which described in detail the possible adverse reactions to the product. Any asserted burden which would be placed upon the defendant would be far outweighed by the salutory function served by such a warning. Can it seriously be maintained that to "tell it like it is" involves the imposition of a burden upon manufacturers?
In the abstract, the directions may not suffer from any fatal ambiguities or infirmities. However, when considered in the practical realm of day-to-day affairs, that may not be the case. At least, for present purposes, that thesis is not so clearly untenable so as to be ignored and shunted aside summarily. Such matters are wisely left for jury determinations.
For the reasons expressed in the foregoing authorities, and in view of the practical setting of this case, we deem it extremely improvident to declare plaintiff contributorily *237 negligent as a matter of law. However, we wish to make it abundantly clear that nothing said herein would foreclose the defendants from availing themselves of this defense at trial. We merely feel that in light of the factual uncertainties involved in this case, it would be unwarranted to terminate plaintiffs' cause at this early stage of the proceedings.
Summary judgment is accordingly denied.
*238