**Robert E. RHODES, Plaintiff-Appellant,**

v.

**INTERSTATE BATTERY SYSTEM OF AMERICA, INC., and Johnson Controls, Inc., formerly Globe-Union, Inc., Defendants-Appellees.**

**No. 82–8619.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 16, 1984.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1984.

George B. Snelling, Jr., Augusta, Ga., for plaintiff-appellant.

A. Rowland Dye, Augusta, Ga., for defendants-appellees.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

In this Georgia diversity action plaintiff-appellant Rhodes seeks damages for personal injuries suffered in an explosion occurring when he struck a match and loosened the vent caps on an automobile battery manufactured and distributed by defendant-appellees. Rhodes appeals an order of the district court dismissing his claim on summary judgment. We reverse and remand.

The battery was manufactured by Johnson Controls, Inc. ("Johnson") for distribution by Interstate Battery System of America, Inc. ("Interstate"), which sold the product under its own name. The plastic top of the battery contained two vent caps designed to cover six cell holes leading to the acid below. Permanently embossed into the vent caps is the following warning:

DANGER–EXPLOSIVE GASES

BATTERIES PRODUCE EXPLOSIVE GASES. KEEP SPARKS FLAME, CIG-ARETTES AWAY. VENTILATE WHEN CHARGING OR USING IN ENCLOSED SPACE. ALWAYS SHIELD EYES WHEN WORKING NEAR BATTERIES.

POISON–CAUSES SEVERE BURNS

CONTAINS SULFURIC ACID. AVOID CONTACT WITH SKIN, EYES OR CLOTHING. ANTEDOTE EXTERNAL–FLUSH WITH WATER. EYES–FLUSH WITH WATER FOR 15 MINUTES AND GET PROMPT MEDICAL ATTENTION. INTERNAL–DRINK LARGE AMOUNTS OF WATER OR MILK, FOLLOW WITH MILK OF MAGNESIA, BEATEN EGG OR VEG. OIL. CALL PHYSICIAN IMMEDIATELY. KEEP OUT OF REACH OF CHILDREN.

The first line in each paragraph of the warning appears in letters approximately twice as large as the remaining text.

Fifteen months prior to the date of Rhodes' injury, his wife purchased the battery and had it installed at a local service station. On the night of the accident, Rhodes stopped after work for two to three hours at a tavern, and when he emerged he discovered the battery was dead. To ascertain whether the battery was low on water, he struck a match to check the fluid level. When the flame was about twelve to fifteen inches from the battery, the battery exploded, covering Rhodes' face and eyes with sulfuric acid.

In his deposition, Rhodes admitted he had not read the warning label. In fact, although he had owned several cars over the years, he stated that he had never seen or read a warning label on an automobile battery.

Rhodes sought recovery in negligence and strict liability against both Johnson and Interstate for their failure to provide an adequate warning of the dangers associated with their product. The defendants maintained Rhodes was precluded from recovery as a matter of law because he failed to read the warning label, which fully and adequately described the inherent dangers of the battery. The district court agreed with

the defendants and granted summary judgment on both the negligence and strict liability claims. Concluding that Rhodes' claims present genuine issues of fact as to the adequacy of the warning, we reverse the order of the district court.

## I. Negligence

■ Rhodes' negligence theory is predicated on the principle that a manufacturer or supplier is under a duty to inform potential users of the product of any facts making it dangerous. *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 740 n. 4 (5th Cir.1980);[1] *Reddick v. White Consolidated Indus., Inc.,* 295 F.Supp. 243, 245 (S.D.Ga. 1969). This duty may be breached in either of two ways: (1) failure to take adequate measures to communicate the warning to the ultimate user, or (2) failure to provide a warning that, if communicated, was adequate to apprise the user of the product's potential risks. *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571, 573 (1979), *modified on other grounds,* 612 F.2d 905 (5th Cir.1980). Both of these issues are uniformly held to be questions for the jury. *Id.* Nevertheless, the district court ordered summary judgment because under Georgia law Rhodes' failure to read the warning label constituted contributory negligence, thus barring plaintiff's recovery as a matter of law.

The district court relied upon three decisions of the Georgia Court of Appeals holding that any insufficiency in the adequacy of the warning label of a product cannot be the proximate cause of the injury when the plaintiff is contributorily negligent by failing to read the warning. *See Cobb Heating & Air Conditioning Co. v. Hertron Chemical Co.,* 139 Ga.App. 803, 229 S.E.2d 681 (1976); *Parzini v. Center Chemical Co.,* 129 Ga.App. 868, 201 S.E.2d 808 (1973), *rev'd on other grounds,* 234 Ga. 868, 218 S.E.2d 580 (1975); *McCleskey v. Olin Mathieson Chemical Corp.,* 127 Ga.App. 178, 193 S.E.2d 16 (1972). Although these cases do stand for the general proposition that failure to read a warning is contributory negligence, they do not necessarily preclude recovery in this case. The plaintiffs in *Cobb, Parzini* and *McCleskey* did not assert, as Rhodes does here, that the warning was not adequately communicated to the user. Rhodes does not maintain that the warning itself, if communicated, was inadequate to apprise him of the danger. He claims his failure to read the label resulted from the defendants' negligence in communicating the warning, i.e., that other, more effective ways of communicating the battery's dangers were available and should have been employed.[2] If the defendants did not take reasonable steps to communicate the warning to Rhodes, his failure to read it would not constitute contributory negligence. *See Stapleton,* 608 F.2d at 573.

■ Failure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user. *Id.* In *Cobb,* after a janitor attempted to liquefy a can of flammable floor sealer by heating it on a stove, the can exploded and started a fire causing severe damage to the plaintiff's property. A large label affixed to the outside of the metal container cautioned against placing the mixture near fire or flame. Although the janitor had used the product for several years and handled the can in a lighted room, he admitted that he had never read the warning label. The plaintiff maintained the label was ineffective to give warning and was deficient in giving instructions as to the sealer's safe usage. The court upheld summary judgment for the defendant on the grounds that "any insufficiency of the warning on the label of a product may not be the proximate cause of the fire when the user fails to read the label." 229 S.E.2d at 682. There was no claim, however, that the manufacturer

---

1. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent decisions of the Fifth Circuit rendered prior to October 1, 1981.

2. Rhodes suggests alternative means of communication such as phosphorus paint that would be visible at night, advertising through the media, and verbal or written warnings issued by the seller.

had taken insufficient steps to communicate the warning to the purchaser.

The plaintiff in *Parzini,* together with two other restaurant employees, was injured when, as he tried to force open a plastic bottle of drain cleaner, the bottle ruptured and squirted sulfuric acid into his face. The court rejected Parzini's contention that the labeling on the bottle was inadequate to warn him of its dangers, holding that his failure to read the warning precluded recovery. 201 S.E.2d at 809. As in *Cobb,* the case involved a plaintiff who was familiar with the product causing the injury and who handled the product in an area where the label was easily visible. There was no assertion of the manufacturer's inadequate communication of the warning to the ultimate user of the product.

In *McCleskey,* a fire was triggered when the plaintiff's employee poured some HTH, a powerful oxidant chemical, into a bucket containing soap residue and other foreign matter. Elaborate and explicit instructions on the HTH drum warned that contact with cleansers, soap products or other contaminants would cause intense fire and that the chemical should be handled only in clean, dry containers. The plaintiff's employees had used HTH for a number of years, but this employee poured the chemical without reading the instructions. The court upheld a directed verdict for the defendants, concluding that the proximate cause of the injury was the employee's use of the product inconsistent with the warnings. 193 S.E.2d at 18. Again, there was no allegation that the manufacturer failed to ensure that the warnings would be communicated effectively to potential users.

*Cobb, Parzini* and *McCleskey* thus hold only that an injured party cannot claim inadequacy of the contents of a warning if he never bothered to read the warning. They do not bar a claim, such as Rhodes', that an injury was caused by the manufacturer's failure to take appropriate measures to communicate the potential risks to the ultimate user. Unlike the plaintiffs in those three cases, Rhodes alleges he was not accustomed to handling this product and did not have the opportunity to view the battery and its accompanying warning under sufficient lighting. His claim is that an embossed warning on the top of the battery is not likely to warn a consumer in his position of the potential dangers and that the defendants were negligent in not attempting to convey the risks in a more effective manner.

■ Summary judgment is not appropriate unless the moving party demonstrates that there was no genuine issue of any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Since we have determined that Rhodes is not prevented from asserting a claim based upon the defendants' negligent failure to provide a warning reasonably likely to apprise him of a battery's dangerous qualities, he should be allowed to attempt to persuade a jury to so find. A factual issue exists as to the adequacy of the defendants' adopted means of conveying the warning. It is for the jury to decide whether or not their chosen method was negligent. We therefore reverse the order of summary judgment on plaintiff's negligence claim.

## II.  *Strict Liability*

■ The district court dismissed Rhodes' strict liability claim against Interstate because it construed Georgia law to permit recovery against a distributor only in negligence. At oral argument, however, counsel for appellees admitted that Interstate could be held liable in strict liability, apparently recognizing the principle that a company selling as its own product a chattel manufactured by another is subject to liability as the product's manufacturer. *See Pierce v. Liberty Furniture Co.,* 141 Ga.App. 175, 233 S.E.2d 33 (1977). We therefore reverse the holding of the district court to the contrary.

The court also held "as a matter of law" that the language embossed on the vent caps was an adequate warning of the potential danger to the plaintiff and that the battery was therefore not defective. Its decision apparently was premised upon a number of factual determinations leading to a conclusion that the appropriate place

for a warning on an automobile battery is on its cell cover.

It generally has been held that a jury is to determine whether a product is defective, whether the user was aware of the danger, and whether his use of the product in view of this knowledge was unreasonable. *Parzini v. Center Chemical Co.,* 136 Ga.App. 396, 221 S.E.2d 475 (1975). The doctrine of strict liability requires a manufacturer of a dangerous product to use reasonable efforts to bring the warning to the attention of the potential user. A product without such a warning is defective. *Chemical Center Co. v. Parzini,* 234 Ga. 868, 870, 218 S.E.2d 580, 582 (1975). Whether the warning in this case was adequate to apprise an automobile owner of the battery's inherent dangers is a question of fact. A jury could conclude that the danger posed by the emission of flammable gases was sufficiently great that the warning should have been presented in a more effective manner. *See Stapleton,* 608 F.2d at 573. The district court erred in deciding the issue as a matter of law, and its order of summary judgment on plaintiff's strict liability claim must be reversed.

REVERSED and REMANDED.

JAMES C. HILL, Circuit Judge, dissenting:

Rhodes instituted this action asserting negligence and strict liability on the part of the battery manufacturer and distributor. His pleadings and supporting affidavits contain no hint of negligence on the part of either defendant. Thus, the only issue is whether the battery was a "defective product" as contemplated by the Georgia law of strict liability. Official Ga.Code Ann. § 51–1–11 (1982); *Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 So.2d 580 (1975).

Rhodes does not contend that the battery was, in lay parlance, a "defective product." Nevertheless, inherent in this product is some degree of danger: batteries contain sulfuric acid, a chemical which tends to ignite or explode if exposed to fire; therefore, batteries possess inherently dangerous characteristics. In these circumstances, a battery would qualify as a "defective prod-uct" if consumers are not adequately warned of such dangers. As the Georgia Supreme Court put the matter:

> Strict liability is not imposed under [§ 51–1–11] merely because a product may be dangerous. Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use.

*Center Chemical Co. v. Parzini,* 234 Ga. at 870, 218 So.2d at 582. Thus, a "defective product" under Georgia law is some product with inherent dangers and without adequate warnings.

The warning embossed on the battery involved in this case is set out in the majority opinion. It not only warned of danger; it cautioned users of the exact danger from which Rhodes' injuries flowed—*i.e.,* the warning importuned users that the battery contained explosive gases which would ignite if exposed to flame.

In order to submit himself to this danger, Rhodes had to remove the battery's vent caps, on which were embossed the explicit warnings. Rhodes admitted that he did not read the warning. Furthermore, in response to questions by the defendants, Rhodes testified:

Q. Have you ever looked at a car battery?

A. I don't mess with batteries.

Q. Well, you've looked at a battery before, haven't you?

A. I've looked at them, but even if there was a warning on it, I wouldn't have paid attention to it.

Q. You wouldn't have paid attention to it?

A. Well, it would have to be a big warning.

Q. What form would the warning have to take for you to pay attention to it?

A. I would say if it said "Warning" and it was in big enough letters, something that I could see, I may pay attention to it, I don't know if I would pay attention to it then.

(R. 21–22) It thus appears that any product manufacturer would have been hard pressed to bring its warning message home to Rhodes.

The law to be applied to these facts is clear. Without exception, the Georgia courts hold that, as a matter of law, a plaintiff's failure to read a warning printed on an injury-producing product constitutes contributory negligence and precludes plaintiff from recovering against the product manufacturer and distributor. *Cobb Heating and Air Conditioning Co. v. Hertron Chemical Co.,* 139 Ga.App. 803, 229 S.E.2d 681 (1976); *Parzini v. Center Chemical Co.,* 129 Ga.App. 868, 201 S.E.2d 808, *rev'd on other grounds,* 234 Ga. 868, 218 S.E.2d 580 (1975); *McCleskey v. Olin Mathieson Chemical Corp.,* 127 Ga.App. 178, 193 S.E.2d 16 (1972). Rhodes, having failed to read the warning embossed on the battery vent caps, is thus barred from recovering against the battery manufacturer and distributor.

In spite of the fact that Rhodes suggests some exotic methods whereby the warning might have been better forced upon him— *e.g.,* using letters printed with phosphorescent paint, etc.—the Georgia cases cited above do not require more of defendants than was done here.[1] Simply stated, the extent of a product manufacturer's exposure to strict liability is not, and can not be, limited only by the scope of a litigant's imagination.

For this very reason, the rule must be that product manufacturers are required to employ warnings that are "reasonably calculated" to reach potential users. *West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202, 212 (Iowa 1972); Noel, Products Defective Because of Inadequate Directions or Warnings, 23 Sw.L.J. 256, 281–85 (1969); Restatement (Second) of Torts § 388(c) (1965). In most cases, whether a warning is "reasonably calculated" to reach the product's users will present a factual issue precluding summary judgment. For such a determination "depends on the language used and the impression that it is calculated to make upon the mind of the average user of the product and involves questions of display, syntax and emphasis." *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 573 n. 4 (5th Cir.1979), *modified on other grounds,* 612 F.2d 905 (1980), *quoting, D'Arienzo v. Clairol, Inc.,* 125 N.J.Super. 224, 230–31, 310 A.2d 106, 112 (1973).

However, summary judgment may be entered in any negligence action where the uncontested facts demonstrate that only one result could be supported and that one party is entitled to judgment as a matter of law. *Gross v. Southern Railway Co.,* 414 F.2d 292 (5th Cir.1969); *Atlantic Coast Line Rwy. v. Key,* 196 F.2d 64 (5th Cir.1952). Here, the undisputed facts establish that the battery carried a warning of its dangers, that the warning clearly appeared on the top of the battery (the portion exposed to anyone attempting to service the battery), and that the warning in no uncertain terms cautioned users to keep flame away from the battery. The district court, on these facts, was entitled to hold that, as a matter of law, this warning was "reasonably calculated" to reach potential users.

Under established Georgia law, this action should have ended with the district court granting summary judgment to defendants. On countless occasions, the judiciary has justifiably protested that it is overburdened with litigation. *See, e.g., Chubb v. City of New York,* 324 F.Supp. 1183, 1189 (E.D.N.Y.1971) (Weinstein, J.) ("Since courts are composed of mere mortals they can decide matters only on the basis of probability, never on certainty. The 'slightest doubt' test if it is taken seri-

---

**1.** We need not decide whether phosphorescent paint on the vent caps of a battery confined in darkness beneath the closed hood of an automobile would absorb enough radiated light to return it visibly in the dark of night. Rhodes probably does not suggest that battery manufacturers employ paint containing radium or other sources of self-illumination said to be carcinogenic.

ously, means that summary judgment is almost never to be used—a pity in this critical time of overstrained legal resources.") Congress responded to such protests by enacting Rule 56, thereby authorizing district courts to spare both parties, as well as the court, the expense and unnecessary delay of trying cases that admit of only one result. *Marsden v. Patane,* 380 F.2d 489, 493 (5th Cir.1967). While few members of the judiciary would suggest that Rule 56 provides a completely adequate response to protests over crowded dockets, it seems clear that Congress has provided courts with "a valuable tool in the law's effort to stem the tide of flooding litigation." *DeBardeleben v. Cummings,* 453 F.2d 320, 326 (5th Cir.1971).

However, "It may be that what we do speaks so loudly that no one will hear what we say." *Wilson v. First National Investment Corp.,* 566 F.2d 1235, 1244–45 n. 1 (5th Cir.1978) (Hill, J., dissenting), *vacated,* 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979). That is, we as appellate judges, show no hospitality to the means given to us to avoid inappropriate devotion of judicial time and resources to meritless litigation when, as is the case here, we are so inhospitable to the use of Rule 56 by district courts. For as I view the majority opinion in this case, it stands for the proposition that there can be no summary judgment in an action alleging inadequate communication of a product's warning. In order to survive this opinion, a district court granting summary judgment in such a case would be required to encounter a claimant's attorney who is devoid of imagination.

Rule 56 serves a vital function in our litigious society. If courts are to continue to function efficiently and to consider and resolve those serious disputes that are presented, they must be allowed to dispose of cases without substantial dispute by summary judgment. Certainly, courts should not be put to the task of conducting a trial each time a litigant suggests that, under some remotely conceivable set of facts, he could recover on his claim or maintain a satisfactory defense to the action. For if left to the fertile imaginations of those scrambling to avoid summary judg-

ment, the standard governing a Rule 56 motion would soon prove to be insurmountable. Fearing that we are fast approaching that standard, I

DISSENT.