United States Court of Appeals,

Eleventh Circuit.

Nos. 93-9458, 94-8028.

Robert Eugene HENRY, Plaintiff-Appellant,

Tonya Renee Henry, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

Aug. 16, 1995.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV492-269), B. Avant Edenfield, Chief Judge.

Before COX, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Robert Eugene Henry sued General Motors Corporation (GM), asserting several product liability claims. A jury found in favor of GM, and Henry appeals. He contends that the district court erred in granting GM's pretrial motion for summary judgment on his negligent-failure-to-warn and negligent-failure-to-instruct claims. Henry also contends that the district court erred in evidentiary rulings and in instructing the jury at trial. Finding no error, we affirm.

I. Background

Henry became paraplegic when a General Motors pickup truck fell off a jack and struck his shoulders. Henry had jacked the truck up in order to replace the truck's front brake pads. After removing the wheel, he set it beside the jacked-up truck to sit on as he put his head and shoulders into the wheel well to reach the pads. The truck came off the jack, and when it fell the edge of

the wheel well struck his shoulders, causing a compression fracture of his lower spine.

The accident and injury may have occurred for at least two reasons. First, Henry used the wrong part of the jack to lift the truck. GM jacks for this truck have two jacking points: a concavity on top of the jack, and a hook that extends from that concavity down the outside of the jack. On a two-wheel drive vehicle such as the one on which Henry was working, the concavity is designed to lift the rear axle, and the hook is designed to lift the front control arm. Henry improperly used the concavity to lift the front control arm. Second, Henry made himself vulnerable by putting his head and shoulders in the wheel well.

The jack carried a yellow sticker with four warnings. One warning advised the user not to get under a jack-lifted vehicle. The jack sticker did not explain the proper use of the two jacking points, but it warned the user to follow the jacking instructions. The jacking instructions provided under the hood and in the owner's manual did not verbally refer to the jack's concavity and hook. The illustrations accompanying the instructions did show the jack's hook being used to lift the control arm in front and the jack's concavity to lift the rear axle. The illustrations were small, however, and they did not highlight the jacking points.

Henry is illiterate. Although he noticed the jack sticker and knew that the sticker's yellow color signified a warning, he did not ask anyone to read it to him. Neither did he have someone read the owner's manual or the jacking instructions placed on the underside of the truck's hood, near the jack storage.

Henry sued GM on several theories. He alleged negligent design, manufacture, warnings, and instructions. He also asserted a strict liability claim. GM moved for summary judgment on the negligent-failure-to-warn and -instruct claims. GM contended that it had no duty to warn because the danger of the truck's falling on a person beneath it was open and obvious. In the alternative, GM contended that even if it had a duty to warn of the danger that the truck might fall, Henry's failure to read the warning sticker and owner's manual, not GM's failure to warn adequately, was the proximate cause of the accident. In response, Henry argued that the danger of using the wrong jacking point was not open and obvious. Henry contended further that his illiteracy distinguishes his case from cases in which the plaintiff neglected to read the warning.[1]

The district court granted GM's motion for summary judgment on his negligent-failure-to-warn and negligent-failure-to-instruct claims. The case proceeded to trial on Henry's strict liability claim, and the jury returned a verdict for GM. Henry appeals.

---

[1]The factual basis for Henry's failure-to-warn claim has been somewhat elusive. In the pretrial order, he articulated it as follows:

> Plaintiff contends GM was negligent in the design of a defective jack system because it is impossible to understand how to properly use the jack. More specifically, Plaintiff contends that reference to the jack and all instructions provided by GM do not successfully communicate how and where the jack should be connected to the truck during use. As a result of this failure, Mr. Henry unknowingly did not choose GM's intended method, and as a result, the jack system was unstable and failed.

(R. 78 at 7).

II. Issue and Standard of Review

Henry primarily asserts that the district court erroneously granted GM partial summary judgment based on the court's conclusion that Henry's failure to read any warning precluded recovery for negligent failure to warn.[2] We review the district court's granting of summary judgment de novo, applying the same standards as the district court. *Georgia Power Co. v. International Bhd. of Elec. Workers, Local 84,* 995 F.2d 1030, 1031 (11th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1644, 128 L.Ed.2d 364 (1994).

III. Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Under Georgia law, to recover for negligence, a plaintiff must show "(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm;

---

[2]Henry also challenges several of the district court's evidentiary rulings at trial and contends that the jury instructions were flawed. We reject these contentions without further discussion. *See* 11th Cir.R. 36-1.

(2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Bradley Ctr., Inc. v. Wessner,* 250 Ga. 199, 296 S.E.2d 693, 695 (1982). The manufacturer can breach its duty to warn in two ways: (1) by failing "to take adequate measures to communicate the warning to the ultimate user," or (2) by failing "to provide a warning that, if communicated, was adequate to apprise the user of the product's potential risks." *Rhodes v. Interstate Battery Sys.,* 722 F.2d 1517, 1519 (11th Cir.1984).

GM has shown itself entitled to summary judgment. First, Henry's deposition testimony negates the element of breach in a claim based on *Rhodes* 's first prong. Unlike the plaintiff in *Rhodes,* who never even saw the warning, Henry testified that he not only saw the yellow sticker on the jack, but knew that the sticker signified a warning. Thus, no fact dispute exists as to whether the warning was "communicated[d] to the ultimate user." *See id.*

Second, Henry's uncontroverted failure to examine the warning once he had noticed it negates the causation element of a claim based on *Rhodes* 's second prong. *See id.* Under Georgia law, a product user's failure to read an allegedly negligent warning, not the warning itself, is considered the proximate cause of an injury resulting from product misuse. *See, e.g., Powell v. Harsco Corp.,* 209 Ga.App. 348, 433 S.E.2d 608, 610 ("The alleged inadequacy of the installation instructions [for a fiberglass catwalk] cannot be the proximate cause of the collapse of the catwalk and [decedent's]

death when the installer did not read the installation directions that [the defendant's] subsidiary actually provided."), *cert. denied,* 209 Ga.App. 348, 433 S.E.2d 608 (1993); *Cobb Heating & Air Conditioning Co. v. Hertron Chem. Co.,* 139 Ga.App. 803, 229 S.E.2d 681, 682 (1976) ("This court has held that any insufficiency of the warning on the label of a product may not be the proximate cause of the [accident] when the user fails to read the label."); *Parzini v. Center Chem. Co.,* 129 Ga.App. 868, 201 S.E.2d 808, 809 (1973) ("[T]he evidence shows that [the plaintiff] did not read the warning[,] and therefore any inadequacy with regard to such warning would not be the proximate cause of his injuries.").

Henry urges us to reject this Georgia rule as a matter of public policy in cases such as his in which the plaintiff is illiterate. He points to widespread illiteracy in our society and the imperative of protecting the illiterate from product hazards. Although we are not unsympathetic to Henry's concerns, we must apply Georgia law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Nothing in the rationale of the cited cases suggests that Georgia would consider the product user's illiteracy relevant once the manufacturer has communicated the existence of a warning. The reasoning behind the rule is based on causation, not contributory negligence or any fault on the part of the product user. Why the user failed to read the warning thus does not matter. Whatever the user's reason, if the user is aware of a warning but ignores its language, the manufacturer's negligence in drafting the warning ceases as a matter of law to be a cause of the injury.

Because Henry thus failed to carry his summary judgment burden as to either of *Rhodes* 's two kinds of failure to warn, summary judgment was appropriate.

IV. Conclusion

Finding no error, we AFFIRM the judgment of the district court.

AFFIRMED.

BARKETT, Circuit Judge, concurring in part, and dissenting in part:

I dissent because I believe this court's precedent requires reversal of summary judgment on one of Henry's negligent failure to warn claims. Although the majority correctly identifies the two tests for measuring a manufacturer's duty to warn set forth in *Rhodes v. Interstate Battery Sys.,* 722 F.2d 1517 (11th Cir.1984), the majority misapplies one of the tests to Henry's claims. In *Rhodes* we stated that a manufacturer can breach its duty to warn (1) by failing "to take adequate measures to communicate the warning to the ultimate user," *or* (2) by failing "to provide a warning that, if communicated, was adequate to apprise the user of the product's potential risks." *Id.* at 1519. While, as to the second test, I agree that Henry's failure to read the warning precluded a jury determination as to the adequacy of the *content* of the warning, our precedent dictates that, as to the first test, Henry's failure to read is *not* dispositive of his alternate claim that the manufacturer breached its duty to warn by failing "to take adequate measures to communicate the warning to the ultimate user." *Id.*

*Rhodes* recognizes that a manufacturer breaches its duty to

warn if it fails to convey the warning adequately, notwithstanding how clear it is. The warning may be a paragon of clarity, but if it is illegible, or located in an irrelevant place, or not properly associated with the product, or otherwise not adequately *communicated* to the user, the manufacturer may be liable. And, as *Rhodes* specifically explains, the plaintiff's failure to read the warning does *not* bar the submission of this question to the jury. Thus, I must disagree with the majority's reasoning that because Henry "not only saw the yellow sticker on the jack, but knew that the sticker signified a warning," as a matter of law "the warning was "communicate[d] to the ultimate user.' " The majority's decision violates the dictates of *Rhodes* by permitting the district court to usurp the jury's role of deciding whether General Motors ("G.M.") took adequate measures to communicate the warning under the circumstances presented here.

Like Henry, the plaintiff in *Rhodes* did not read the warning on the product in question. Rhodes had been out drinking one night, and returned to his car to find its battery dead. It was dark, and in order to check the fluid levels, he struck a match and removed the plug covers from the battery cells. He did not read the warnings embossed on the battery which indicated, among other things, that batteries produce explosive gases and that sparks, flame and cigarettes should be kept away. The battery exploded, covering Rhodes' face and eyes with sulfuric acid. Rhodes admitted that he had not read the warning label on that battery or on the batteries of any of the other cars he had owned over the years. He sought recovery in negligence for failure to provide an adequate

warning of the dangers associated with the product.  The manufacturer argued, as does G.M. here, that Rhodes was precluded from recovery as a matter of law because he had "failed to read the warning label, which fully and adequately described the inherent dangers of the battery." *Id.* at 1518.  This court reversed summary judgment granted to defendants, concluding that, despite Rhodes' failure to read the battery's warning, his claims presented genuine issues of material fact as to the *adequacy* of defendants' means of conveying the warning to a consumer in his position.

The relevant Georgia case law, as found in *Parzini v. Center Chemical Co.,* 129 Ga.App. 868, 201 S.E.2d 808 (1973), *Cobb Heating & Air Conditioning Co. v. Hertron Chemical Co.,* 139 Ga.App. 803, 229 S.E.2d 681 (1976), and *McLeskey v. Olin Mathieson Chemical Corp.,* 127 Ga.App. 178, 193 S.E.2d 16 (1972), is not to the contrary.  As this court explained in *Rhodes,* these Georgia cases "hold only that an injured party cannot claim inadequacy of the *contents* of a warning if he never bothered to read the warning. They do *not* bar a claim, such as Rhodes', that an injury was caused by the manufacturer's failure to take appropriate measures to *communicate* the potential risks to the ultimate user." *Rhodes,* 722 F.2d at 1520 (emphasis added).  The *Rhodes* court concluded that "[a] factual issue exists as to the adequacy of the defendants' adopted means of conveying the warning.  It is for the jury to decide whether or not their chosen method was negligent." *Id.*

In the instant case, the majority rests its analysis on the finding that the manufacturer communicated the existence of a warning.  But it does not follow from the fact that G.M.

communicated the *existence* of a warning to Henry, that G.M. took adequate measures to communicate to Henry *the specific warning as to the G.M. jack,* which is what the first *Rhodes* test requires. Henry, like Rhodes, failed to read the product warning, and asserted that the warning was inadequately communicated to the user. At issue in both cases was the plaintiff's claim that defendants had negligently failed to provide *a warning reasonably likely to apprise him* of the product's dangerous qualities.[1] Both plaintiffs failed to read the respective warnings, and each in effect claimed that the warning at issue "was not likely to warn a consumer *in his position* of the potential dangers" and that the defendants were negligent in "not attempting to convey the risks in a more effective manner." *Id.* at 1520 (emphasis added). The fact that Henry, unlike Rhodes, noticed a "warning" does not change the result.[2] Henry may have been aware of a warning of *some* kind, as one may be aware of small print on a label, but a warning as to what, when and where? It is an unwarranted leap of reasoning to

---

[1]In his deposition, Walter Zych, an expert witness for G.M., testified that it was foreseeable that illiterates would use G.M. jacks:

> Q: So would you agree with me, then, that there would be users of G.M. jacking systems that don't know how to read or have a sixth grade or lower reading capability?
>
> A: That may be, yes.

[2]There is no further basis to distinguish the facts in *Rhodes* and *Henry.* Rhodes did not see the warning because it was dark. Had he had a flashlight, for example, or had the battery warning glowed in the dark the outcome might have been different. Similarly, Henry did not attend to the warning because he could not read it. Had he been able to read or had the manufacturer provided an appropriate pictogram, the outcome might have been different.

assume, *as a matter of law,* that illiterates, though they cannot read, are thoroughly acquainted with the conventions that govern the use and understanding of printed warning labels in a highly literate society.  Even if the G.M. sticker did make an "existential" communication of some kind with Henry, it would still be a question for the jury whether G.M. took measures to communicate the jack warning that were *adequate* for the purposes of an illiterate like Henry under all the pertinent evidence presented on this issue.  Summary judgment is improper in this case for the identical reason that we found it improper in *Rhodes.*

Nor is *Rhodes* an isolated case.  Indeed, in two other cases, neither of which is addressed by the majority, this circuit has confirmed the impropriety of summary judgment in circumstances where the evidence has shown that plaintiff in some sense had the opportunity to read the warning but did not, or did read and understand the warning but failed to heed it.  In *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571 (5th Cir.1979), for example, a homeowner sued a motorcycle manufacturer and distributor for damages resulting from a fire in her home caused when a motorcycle tipped over and leaked gasoline which was subsequently ignited by a pilot light.[3]  The leak resulted from the motorcycle's fuel switch having been left in the "on" position.  Although there was a warning about possible gasoline leakage in this situation in the owner's manual, the jury returned special verdicts finding that

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), we held that decisions of the former Fifth Circuit reached before October 1, 1981, are binding on the Eleventh Circuit.

defendants were negligent and had breached their duty to warn. On appeal, defendants, citing *Cobb, Parzini,* and *McLeskey,* argued that the plaintiff was barred from making her claim because, as a matter of law, failure to read a label is contributory negligence. This court held that "[w]hether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury." *Stapleton,* 608 F.2d at 573 (citing *West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202 (Iowa 1972); *Hubbard-Hall Chemical Co. v. Silverman,* 340 F.2d 402 (1st Cir.1965)). We explained that the jury must determine whether putting the warning on page 13 in an ordinary typeface was an adequate effort, and whether the warning so located was sufficient to warn the user of the danger. After noting that the cited cases all involved warnings that were attached to products, and observing that the plaintiff's son, who had tipped the motorcycle over, had testified that he "looked through the manual" though he "really didn't read it," we reasoned that "the jury could conclude that the danger posed by the gas leakage was sufficiently great that the warning should have been presented in a way immediately obvious to even a casual reader." *Id.*

Similarly, in *Watson v. Uniden,* 775 F.2d 1514 (11th Cir.1985), we reversed a grant of summary judgment to defendants on Watson's negligence claims in a product liability suit. Having properly installed a Uniden telephone and used it to call out for awhile without incident, Watson found it ringing and proceeded to answer it for the first time. As she placed the receiver to her ear, the

phone rang again and permanently impaired her hearing. Unlike an ordinary phone, the Uniden had a speaker in the handset which produced the ring as well as the caller's voice. The handset had a sticker on its inside face which read "CAUTION—LOUD RING Move switch to talk position before holding receiver to ear." *The Watsons read the instruction book* when they received the phone and *Mr. Watson explained the procedure to Mrs. Watson* when he installed it. However, Mrs. Watson did not move the switch to the talk position and the phone rang directly in her ear. *She knew she was supposed to move it but simply forgot to do so.* Relying on *Rhodes,* this court disagreed with the district court that the warning on the handset was adequate as a matter of law and found that "the adequacy of the warning is an issue a jury must decide." *Id.* at 1516. We explained that "the general rule in Georgia is that questions of negligence and proximate cause, except in plain, palpable and indisputable cases, are solely for the jury, and the courts will decline to decide such questions unless reasonable minds cannot differ as to the conclusions to be reached." *Id.* Finally, we concluded that "Mrs. Watson asserted a claim based upon Uniden's negligent failure to provide a warning reasonably likely to apprise her of the phone's dangerous qualities, and she should be allowed to attempt to persuade a jury so to find. A factual issue exists as to the adequacy of Uniden's means of conveying the warning." *Id.*

Because this court's decisions in *Rhodes, Stapleton* and *Watson* require reversal of summary judgment in this case, I respectfully DISSENT.