Ellen L. STAPLETON, Plaintiff-Appellee,

v.

KAWASAKI HEAVY INDUSTRIES, LTD. and Kawasaki Motors Corp., U.S.A., Defendants-Appellants.

No. 77–2115.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1979.

Opinion on Rehearing and Rehearing Denied Feb. 27, 1980.

Hamilton Lokey, Glenn Frick, Atlanta, Ga., for defendants-appellants.

Harold S. White, Alfred B. Adams, III, Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Circuit Judge, SKELTON,* Senior Judge, and RUBIN, Circuit Judge.

GODBOLD, Circuit Judge:

Plaintiff's son accidentally tipped over a Kawasaki motorcycle while cleaning it in the basement of his home. Because the fuel switch had not been turned to the off position, gasoline leaked from the tank and was ignited by the pilot light in a heater. Plaintiff's home was damaged by the ensuing fire. Plaintiff sued Kawasaki Heavy Industries, manufacturer of the motorcycle, and Kawasaki Motors Corp., U.S.A., distributor of the motorcycle, alleging negligence, strict liability for selling a defective motorcycle, and breach of a duty to warn about the dangerous nature of the fuel switch on the motorcycle.

The jury returned special verdicts finding that defendants were negligent and had breached their duty to warn; that the motorcycle was *not* defective, "in the sense that it was unfit or unsuited for the use intended;" that plaintiff was damaged in the amount of $53,570.86. In addition, the jury returned a general verdict finding for plaintiff in the sum of $53,570.86. The court entered judgment for plaintiff in the amount found by the jury. On motion for new trial, the court denied the motion conditioned upon plaintiff's agreeing to a remittitur of $6,000.00. Plaintiff agreed. Defendants appeal.

The jury's answers to questions 2(a) and 7 are not inconsistent with each other.

2. (a) Were both defendants guilty of some one or more of the acts of negligence claimed by plaintiff? Answer yes or not. Answered "Yes."

7. Was the motorcycle in question defectively designed and constructed in the sense that it was unfit or unsuited for the use intended? Answer yes or no. Answered "No."

The defendants say that every assertion of negligence was predicated on defective design, so that the answer to 2(a) of necessity was a finding that there was a design defect, yet the answer to 7 was a categorical finding that the motorcycle was not defectively designed. The acts of negligence referred to in 2(a) were specified in the court's instructions to the jury: First, negligence in manufacturing the motorcycle with a design defect such that gasoline would flow freely from the machine when it was tipped to its side; second, negligence in failing to warn of the motorcycle's unsafe design feature; third, negligence in placing in the stream of commerce a dangerous and improperly designed motorcycle. The second allegation of negligence is not based on a charge that there was a *defect* but on a charge of failure to warn of an "unsafe design feature."

█ The answers to 2(a) and 7 must be read together with 9:

9. Did the defendant in Claim Two, Kawasaki Heavy Industries, in its owner's manual, fail to adequately warn prospective purchasers of the vehicle that with the fuel switch in the "on" position it would allow gasoline to spill from the gas tank when tilted to left or right from an upright position? Answer yes or no. Answered "Yes."

The jury, in answering 2(a) could have meant that the motorcycle was not defective in the sense that there was something wrong with it that caused it to be unfit or unsuited for the purpose intended, but that defendants should have made greater efforts to warn users of the potential danger in failing to turn the fuel switch to the off position. This failure to warn is sufficient to hold Kawasaki liable under both negligence and strict liability theories. *See Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 S.E.2d 580 (1975), *on remand,* 136 Ga.App. 396, 221 S.E.2d 475 (1975).

█ Question 9, dealing with defendants' failure to warn, was not necessarily premised on an initial finding of defectiveness, a finding the jury declined to make in answering 7. As just discussed, the jury was instructed that they could find negligence in failing to warn of an "unsafe

* Senior Judge of the United States Court of Claims, sitting by designation.

design feature." In question 9, as in question 2, there is no requirement that a design *defect* be found.[1]

Whether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury. *See, e. g., West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202 (Iowa 1972); *Hubbard-Hall Chemical Co. v. Silverman,* 340 F.2d 402 (CA1, 1965). The manual containing the warning was in evidence, and the jury could determine whether putting the warning on p. 13 in ordinary type was an adequate effort and whether the warning so located was sufficient to warn user of the danger. There is no merit to the assertion that the evidence does not support a finding of failure to warn.[2]

Defendants' major point is a contention that plaintiff is barred under cases holding that, as a matter of law, failure to read a label is contributory negligence.[3] These cases involved failure to read labels attached to the product. Here the warning is on p. 13 of the owner's manual in ordinary type. Whether a warning is physically attached to a product has been held to be of significance in many cases from other jurisdictions. *See, e. g., Seibel v. Symons Corp.,* 221 N.W.2d 50 (N.D.1974); *Eck v. E. I. du Pont deNemours & Co.,* 393 F.2d 197 (CA7, 1968); *McKay v. Upson-Walton Co.,* 317 F.2d 826, 828–29 (CA7, 1963) (Swygert, J., concurring).

In any event, plaintiff's son testified that he "looked through the manual," though he "really didn't read it," that he "glanced at it" though he did not read it from cover to cover. When asked what he was looking for he responded that he was looking through the manual to see "if there was anything exceptional that I should note about it." The jury could conclude that the danger posed by gas leakage was sufficiently great that the warning should have been presented in a way immediately obvious to even a casual reader.[4]

The damages found by the jury, $53,570.86, was the amount sued for. The proof of damages included approximately $20,000.00 of property and clothing located in the house. There was no reversible error in the method of establishing the value of household items. Plaintiff's expert, a person experienced in the salvage business, viewed the items after the fire. At trial, he verbally went through the house room by room, and in each room item by item (or

---

1. In fact, such an instruction would be erroneous, as selling an otherwise non-defective product without adequately warning the public of dangers associated with the product can serve as the basis for liability under both negligence and strict liability principles. *See Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 S.E.2d 580, *on remand,* 136 Ga.App. 396, 221 S.E.2d 475 (1975).

2. In their reply brief defendants raise for the first time the argument that there was no duty to warn about the gas leakage problem because it could have been easily and inexpensively eliminated by Kawasaki. This takes out of context language from *Center Chemical Co. v. Parzini, supra,* and is contrary to common sense.

3. *Cobb Heating & Air Conditioning Co., Inc. v. Hertron Chemical Co.,* 139 Ga.App. 803, 229 S.E.2d 681 (1976); *Parzini v. Center Chemical Co.,* 136 Ga.App. 396 at 399, 221 S.E.2d 475 at 478 (1975); *McCleskey v. Olin Mathieson Chemical Corp.,* 127 Ga.App. 178, 193 S.E.2d 16 (1972). We do not need to speculate whether the Georgia Supreme Court would endorse this

rule, which is contrary to the general rule that whether the means employed to convey the warning to the user was adequate is for the jury.

4. Whether a warning adequately makes a user aware of the danger and its severity " 'depends upon the language used and the impression that it is calculated to make upon the mind of an average user of the product' " and involves " '[q]uestions of display, syntax and emphasis.' " *D'Arienzo v. Clairol, Inc.,* 125 N.J.Super. 224, 230–31, 310 A.2d 106, 112 (1973).

Even if contributory negligence were a bar it would only bar recovery for negligence. On the strict liability claim it would raise a jury question as to the adequacy of the warning. *See Parzini v. Center Chemical Co.,* 129 Ga. App. 868, 201 S.E.2d 809 (1973), *after trial,* 134 Ga.App. 414, 214 S.E.2d 700 (1975), *rev'd,* 234 Ga. 868, 218 S.E.2d 580 (1975), *on remand,* 136 Ga.App. 396, 221 S.E.2d 475 (1975). The manufacturer was held liable on both theories, the distributor only for negligence.

items by common sense groupings) and gave his opinion as to cost or value when new, and gave an opinion of market value immediately before the fire. There was no substantial objection to this lengthy and detailed testimony. As the district court pointed out, some of the descriptions were necessarily sketchy, and if defendants considered any of them not sufficient the remedy was an objection at trial.

Plaintiff's proof at trial demonstrated, at a maximum, damages of $51,459.01, which included $8,000.00 for the full pre-fire value of plaintiff's piano. On motion for new trial, the court found that plaintiff was not entitled to the full value of the piano because she had it repaired for $2,140.00. It then concluded that the maximum amount of damages reasonably supported by the evidence was $47,570.86, the amount found by the jury less $6,000.00.[5] The court ordered plaintiff to remit $6,000.00, and she agreed, leaving a net award of $47,570.86.

■ Despite the district court's painstaking order, we hold that it erred in only requiring a remittitur of $6,000.00. The jury's award exceeded plaintiff's proof of damages by $2,111.85, an amount not included in the $6,000.00 adjustment for the piano. The plaintiff seeks to justify this discrepancy by citing Georgia cases holding that a jury is not bound by expert testimony regarding value and may apply its own common experience and set values higher or lower than testified to.[6] This theory has no application here. Defendants' motion for new trial urged that the general and special verdicts for $53,570.86 were so unrelated to the evidence that a new trial was required.

In denying a new trial the court did not rest upon or even refer to a theory that the jury, based on its own experience, could assess higher values than plaintiff's proof showed. Rather, the court was of the opinion that the jury believed the testimony of plaintiff and her expert as to the value of the household items but instead of adding the totals of the schedules listing several hundred items they simply "borrowed" the amount sued for, assuming it was the same. On this predicate—that the jury intended to award the amounts established by the testimony of plaintiff and her expert—the plaintiff was left with an after-remittitur award $2,111.85 greater than "the maximum that the jury reasonably could find," *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (CA5), *modified on remand, aff'd* 456 F.2d 180 (CA5, 1972), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972), or as we have phrased it in another case, the maximum amount that is reasonably supported by the evidence, *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 669 (CA5, 1974). The remittitur must be increased to $8,111.85.[7]

The judgment of the district court is VACATED and the cause is REMANDED with directions to enter a conditional remittitur in the amount of $8,111.85 and for such further proceedings as may be required.

---

**5.** Presumably the court got $6,000.00 by rounding off the cost of repairs to the piano from $2,140.00 to $2,000.00 and deducting this from the $8,000.00 allowed by the jury, reaching a net excessive award of $6,000.00.

**6.** *Southern v. Cobb County*, 78 Ga.App. 58, 50 S.E.2d 226 (1948); *McLendon v. City of La Grange*, 47 Ga.App. 690, 171 S.E. 307 (1933); *Sammons v. Copeland*, 85 Ga.App. 318, 69 S.E.2d 617 (Ga.App.1952).

**7.** An appellate court may itself order a new trial unless plaintiff will consent to a remittitur in a specified amount. The power of the appellate court is the same as that of the trial court, and in fixing the amount the same standard applies as to the trial court. 11 *Federal Practice and Procedure*, Wright & Miller, § 2820, pp. 133–34. Where the trial court already has invoked its discretion in granting a remittitur, our scope of review is even narrower than usual. *Pricemont Constr. Corp. v. Smith*, 433 F.2d 1217 (CADC, 1970); 11 *Federal Practice and Procedure*, Wright & Miller, § 2820, p. 136 n. 7. Here the error or oversight is patent and the correction mechanical. We, therefore, conclude it should be made at the appellate level.