[No. 56614-8-I. Division One. January 29, 2007.]

JOSEPH A. SIMONETTA ET AL., *Appellants*, v. VIAD CORPORATION, *Respondent*.

*Matthew P. Bergman* and *David S. Frockt* (of *Bergman & Frockt, PS*) and *LeAnn McDonald*, for appellants.

*Ronald C. Gardner* and *David D. Mordekhov* (of *Gardner Bond Trabolsi, PLLC*), for respondent.

*Mark B. Tuvim* on behalf of Ingersoll-Rand Co. and Leslie Controls, amici curiae.

¶1 APPELWICK, C.J. — Joseph Simonetta brought a product liability lawsuit against Viad Corp., sounding in both negligence and strict liability based on exposure to asbestos

causing subsequent lung cancer. The exposure was to insulation manufactured by another corporation but necessarily used to encapsulate a Viad[1] evaporator installed aboard a Navy ship. The trial court granted summary judgment for Viad on the basis that the corporation owed no duty to warn Simonetta of the potential hazards of asbestos because the exposure did not stem from the evaporator itself. We hold that Viad did have a duty to warn once it knew that the asbestos necessarily used with its product posed a health risk to those servicing its equipment. We reverse and remand for further proceedings.

### FACTS

¶2 Joseph Simonetta was diagnosed with lung cancer and underlying "asbestos related pleural disease" in 2000 and 2002. Appellant's expert testified as to a causal link between the lung cancer and asbestos exposure. Simonetta's exposure to asbestos appears to stem from his tenure as a Navy machinist mate.

¶3 Simonetta worked for the Navy between 1954 and 1974. He served as machinist mate from 1958-59, during which time his duties included maintaining and servicing a Griscom Russell evaporator (also called a distiller), which converted seawater into fresh water for use aboard the USS *Saufley*. At one point during his tenure, Simonetta had to open the evaporator in order to examine and repair some of the internal tubing of the equipment. To open the evaporator, Simonetta removed block insulation, asbestos mud, and asbestos cloth using a hammer. After completing the repairs, he had to reinsulate the unit with the same materials.

¶4 The evaporator was shipped from Griscom Russell without asbestos insulation. The asbestos exposure came

---

[1] The evaporator was manufactured by Griscom Russell. Viad is the alleged successor to Griscom Russell. The issue of Viad's corporate successor liability for Griscom Russell's products was a contentious issue at the trial court and was not granted summary judgment. Successor liability is *not* before the court and will be assumed for purposes of this appeal.

from a product that was not manufactured, provided, or installed by the respondent. Simonetta was not aware of the company who manufactured or installed the insulation.

¶5 Simonetta brought both negligence and strict liability claims against Viad for failure to warn of the danger posed by asbestos insulation. The asbestos exposure at issue occurred in 1958-59 and therefore is governed by pre-Washington product liability act (WPLA) product liability law. *Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 33-34, 935 P.2d 684 (1997). The issue at the heart of the summary judgment is whether Viad had a duty under either theory to warn of dangers resulting from exposure to asbestos from another manufacturer's insulation used with the Griscom Russell evaporator. The trial court granted summary judgment for defendant on both the negligence and strict liability claims based on the lack of any duty owed to the plaintiff. The trial court judge determined that no duty existed because "[a]lthough the product manufacturer knew or reasonably should have known that its product would be insulated with asbestos-containing material, the product itself did not produce the injury."

## ANALYSIS

¶6 On review of summary judgment, courts engage in the same inquiry as the trial court. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Seattle Police Officers Guild v. City of Seattle*, 151 Wn.2d 823, 830, 92 P.3d 243 (2004). The moving party bears this burden of proof. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A material fact is one upon which the outcome of the litigation depends. *Seattle Police*, 151 Wn.2d at 830. Facts and all reasonable inferences must be construed in favor of the nonmoving party. *Id.* Based on this standard, facts and inferences should be viewed in the light most favorable to appellant Simonetta.

*1. Negligence*

¶7 Plaintiff alleges negligence for Viad's failure to warn of the potential for asbestos exposure from use of its evaporator. A product liability negligence claim focuses on the manufacturer's conduct. *Young v. Key Pharms., Inc.*, 130 Wn.2d 160, 178, 922 P.2d 59 (1996) (*Young* II). As an element of a negligence claim under products liability, as in any negligence case, the plaintiff must demonstrate a duty owed by the defendant. *Hansen v. Friend*, 118 Wn.2d 476, 486, 824 P.2d 483 (1992). The existence of a duty is a threshold question determined as a matter of law. *Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003). Once a duty is found, the jury determines the scope of that duty based on the foreseeable range of danger. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). Under negligence law, a defendant has a duty to exercise ordinary care and "[a] manufacturer's duty of ordinary care is a duty to warn of hazards involved in the use of a product which are or should be known to the manufacturer." *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 772, 733 P.2d 530 (1987). This manufacturer's duty to warn attaches when a reasonable person using the product would want to be informed of the risk and requires the use of ordinary care to test, analyze, and inspect products, and keep abreast of scientific knowledge in its product field. *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 477-79, 804 P.2d 659 (1991).

¶8 Viad contends no duty was owed to Simonetta because the Griscom Russell evaporator itself was not hazardous. However, "[a] manufacturer can also be found negligent for failure to give adequate warning of the hazards involved in the use of the product which are known, or in the exercise of reasonable care should have been known, to the manufacturer." *Novak v. Piggly Wiggly Puget Sound Co.*, 22 Wn. App. 407, 412, 591 P.2d 791 (1979) *see also* RESTATEMENT (SECOND) OF TORTS § 388 (1965); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967); *Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979). A duty to warn exists toward users of the

product who may encounter a known hazard. Accordingly, because Simonetta was a repairman engaged in the operation and maintenance of an evaporator, Griscom Russell owed him a duty of reasonable care to warn of the known hazards involved in the use of the product.

¶9 Viad contends that it is not liable because it must only warn of the dangers "inherent in its product." Asbestos was not a Griscom Russell product. But, the danger of asbestos exposure is "inherent" in the use of its product because the evaporators were built with the knowledge that insulation would be needed for the units to operate properly and that workers would need to invade the insulation to service the units. Griscom Russell also knew that the Navy used asbestos for thermal insulation. A product designed so that use requires the invasion of asbestos insulation has a known inherent danger because the particles become respirable, which exposes people nearby to their toxic nature.

¶10 The undisputed evidence presented by Simonetta demonstrates Griscom Russell's (Viad's) awareness of the necessary requirements for the use of the evaporator, both operations and maintenance. Marine engineering expert Charles Cushing testified that "somebody who designs a piece of equipment for shipboard use that involves the use of steam and that is hot would understand that the unit is going to be insulated." He also agreed that during the time frame of Simonetta's employment, the high temperature thermal insulation used by the Navy contained asbestos. Although asbestos was not the required material, Griscom Russell knew it was used by the Navy for thermal insulation. Jerry Lauderdale, certified industrial hygienist, confirmed with his testimony, "any manufacturer of evaporators for the U.S. Navy . . . knew, or at a minimum, should have known, that the asbestos containing insulation . . . needed to operate their evaporators safely and efficiently would have posed harm to workmen such as Mr. Simonetta." This ample evidence of Griscom Russell's knowledge led the trial court to conclude that the manufacturer "knew or

reasonably should have known that its product would be insulated with asbestos-containing material."

¶11 Griscom Russell knew, or should have known, that the use of asbestos to insulate the evaporators would result in exposure to respirable asbestos during maintenance. This risk of exposure is a known danger. Griscom Russell understood with certainty that the evaporator would need insulation to work properly, that the Navy used asbestos insulation, that asbestos insulation would be applied to the unit, and that the unit would need to be invaded for routine service. Griscom Russell had a duty to warn workmen like Simonetta of the known danger, even though it did not produce or supply the asbestos.[2]

¶12 Viad argues that Washington precedent does not hold defendants liable for injuries resulting from products manufactured by third parties. Viad primarily relies upon *Sepulveda-Esquivel v. Central Machine Works, Inc.*, 120 Wn. App. 12, 84 P.3d 895 (2004), in which a manufacturer of an industrial hook was held to have no duty for injuries resulting from the failure of an add-on component to the hook. "Under the common law, component sellers are not liable when the component itself is not defective." *Id.* at 19. Viad states that "[i]n both cases, the inherent danger was in the finished assembly, and arose from the product provided by others." Unlike the case at bar, *Sepulveda-Esquivel* applies the WPLA and also derives its claim from failure of the product. The cases are distinguishable because Simonetta does not claim the product failed, but that the lack of warning was an actual defect of the evaporator. As seen above, product failure is not necessary since a manufacturer can be found negligent for failure to warn of known

---

[2] Simonetta argues that foreseeability of the injury created the duty to warn. Foreseeability does not create a duty but sets limits once a duty is established. "A manufacturer's duty to use ordinary care is bounded by the foreseeable range of danger." *Koker*, 60 Wn. App. at 480. Once a duty is found to exist, the jury decides foreseeability by determining whether the harm was within the foreseeable scope of risk. *Rikstad v. Holmberg*, 76 Wn.2d 265, 270, 456 P.2d 355 (1969). The duty to warn workers like Simonetta arises from the requirement of ordinary care to warn users of a known danger.

hazards from use of its product even in the absence of a defect or failure. *Novak*, 22 Wn. App. at 412. Additionally, the *Sepulveda-Esquivel* manufacturers had no knowledge of the future use or modifications of the product. *Sepulveda-Esquivel*, 120 Wn. App. at 13. This differs from Griscom Russell's undisputed knowledge that the evaporators necessarily would be used with asbestos insulation for proper and safe use. The precedent relied upon is distinguishable.

¶13 Implicitly Viad argues current common law does not require this result. "Common law is not static. It is consistent with reason and common sense. The common law 'owes its glory to its ability to cope with new situations. Its principles are not mere printed fiats, but are living tools to be used in solving emergent problems.'" *Senear v. Daily Journal-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982) (citation omitted) (quoting *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 819, 355 P.2d 781 (1960)). At times, this dynamic nature of the common law requires the courts to make logical extensions of principles announced in earlier decisions in order to meet evolving standards of justice. *Dickinson v. Edwards*, 105 Wn.2d 457, 480-81, 716 P.2d 814 (1986). Several of these expansions have occurred in the realm of product liability. The Washington courts adopted strict liability as defined in *Restatement (Second) of Torts* § 402A (1965). *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). We have moved away from the "reasonable consumer test" for the duty to warn and moved to a focus on when a manufacturer becomes aware, or should have become aware, of the dangers of a product. *Young* II, 130 Wn.2d at 178. Most recently, this court expanded the definition of a "user" of an asbestos product to include a family member exposed to fibers on a worker's clothing. *Lunsford v. Saberhagen Holdings, Inc.*, 125 Wn. App. 784, 106 P.3d 808 (2005).

¶14 If the asbestos insulation was placed inside the evaporators or outside the evaporators by Griscom Russell, the law has long held that a duty to warn would exist as to

one who would necessarily have to disturb the asbestos to service the evaporator. Given the certainty that the evaporators would need to be insulated to operate properly, that the Navy used asbestos insulation, and that workers would have to disturb the asbestos insulation to perform maintenance on the units, Griscom Russell was aware that exposure would occur during the use and maintenance of the product. The duty of ordinary care requires a duty to warn when a manufacturer knew, or should have known, of a hazard produced by reasonable use. While this duty has not traditionally applied to products manufactured by another, this present case represents a set of facts that compels another logical extension of the common law. We hold that Grissom Russell had a duty to warn of the risk of asbestos exposure with respect to servicing the evaporator units. Summary judgment on the issue of duty to warn under the negligence theory was improper.

## 2. Strict Liability

¶15 Under common law, strict liability applies when

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

*Ulmer*, 75 Wn.2d at 530-32 (quoting RESTATEMENT (SECOND) OF TORTS § 402A).

¶16 To establish a claim for strict liability under section 402A, the plaintiff must show (1) a defect (2) in

existence when the product left the hands of the manufacturer, (3) which was not contemplated by the user, (4) which renders the product unreasonably dangerous, and (5) which proximately caused the injury. *Lamon v. McDonnell Douglas Corp.*, 19 Wn. App. 515, 521, 576 P.2d 426 (1978). Viad claims that "[b]ecause the evaporator left Griscom Russell's plant free of insulation, it was not, as a matter of law, a defective product." However, Viad may still face strict liability since "a product, though faultlessly manufactured, is unreasonably dangerous when placed in the hands of the ultimate user by a manufacturer without giving adequate warnings concerning the manner in which to safely use it." *Novak*, 22 Wn. App. at 412. A physical defect is unnecessary because "in the failure-to-warn case, the defect which makes the product 'unreasonably dangerous' . . . is in the absence of adequate warnings concerning the product's use, rather than any physical defect in the product itself." *Little v. PPG Indus., Inc.*, 19 Wn. App. 812, 822, 579 P.2d 940 (1978). If a product has dangerous propensities, the manufacturer is strictly liable for inadequate warnings about inherent dangers in the use of the product unless those dangers are obvious or known to the user. *Id.* at 822. It is undisputed that asbestos has dangerous propensities when invaded. Even though the evaporator left the factory without insulation, it was defective. It had to be encapsulated in insulation for use, yet included no warning about the risk of exposure to a known danger, which would result from disturbing the insulation during ordinary use and necessary maintenance on the units.

¶17 Viad claims that Griscom Russell cannot be sued under strict liability because Washington case law restricts liability under section 402A to "entities in the chain of distribution of the defective product." Griscom Russell was not in the chain of distribution of the asbestos. The asbestos was applied after the evaporators were delivered and installed. However, strict liability applies to "any person engaged in the business of selling products for use or consumption." RESTATEMENT (SECOND) OF TORTS § 402A cmt. *f*.

Because of its engagement in the business of selling evaporators for use by the Navy, Griscom Russell can be held strictly liable for the harms originating from use of the evaporator. The required maintenance on the evaporator encapsulated in asbestos resulted in harmful asbestos exposure.

¶18 Viad misconstrues the source of Simonetta's harm by focusing blame for his exposure to the asbestos insulation on the manufacturers of the asbestos alone. "Here, the product causing the injury is asbestos insulation, and Griscom Russell was neither the manufacturer nor supplier of this product." According to Viad, this limits the manufacturer's liability because "the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987). However, *Lockwood* differs because the issue was the identity of the asbestos manufacturer. *Id.* There is no question about the identity of the manufacturer of the product involved in this case.

¶19 Viad also relies on another asbestos case where the plaintiff sued a manufacturer whose product was insulated with third-party-applied asbestos insulation. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495 (6th Cir. 2005). While the facts are similar to the case at bar, the issue was causation, not the existence of a duty. In *Lindstrom*, the court granted summary judgment for the defendant because of the plaintiff's inability to prove the defendant's product caused his illness. *Id.* Plaintiff could not establish causation because " '[t]he component part manufacturer is protected from liability when the defective condition results from the integration of the part into another product and the component part is free from defect.' " *Id.* (quoting *Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 715 (5th Cir. 1986)). Additionally, Simonetta's case is distinguishable because the evaporator and insulation do not fit the description of "component parts" given in *Lindstrom*. The defective condition did not result from the integration of the evaporator into another product. Instead, the evapo-

rator was the main unit; the insulation is the "component part" incorporated into the final assembly. If the insulation was a component, Griscom Russell clearly would have the duty to warn of potential defects in the final product.

¶20  A California case with closely related facts provides a strong counterargument to Viad's "component manufacturer" defense. A fire fighter was injured when the "deck gun," or water cannon, broke loose from the fire truck's mounting assembly, which had been manufactured by another party. *Wright v. Stang Mfg. Co.*, 54 Cal. App. 4th 1218, 1222, 63 Cal. Rptr. 2d 422 (1997). The "gun" itself did not fail but separated from the mounting because the riser was not designed to have the strength to withstand the water pressure of the deck gun. *Id.* at 1224-26. Like Viad, the defendant provided a finished product it knew would be used with another product in a way that could result in harm without a warning as to the proper and safe use. *Id.* at 1226. The defendant attempted to defend itself from a duty to warn by claiming it was merely a component manufacturer of a final product. The court "fail[ed] to see how the deck gun was 'packaged, labeled and marketed,' by the Glendale Fire Department; rather, the fire department apparently installed it on their firetruck without making any changes to the deck gun or firetruck. It is also *not negated* . . . that the manufacturer knew that the fire department intended to attach the deck gun to a threaded riser pipe." *Id.* at 1234-35. As a result, the court found the trial courts' grant of summary judgment in favor of the manufacturer of the deck gun was improper, even though the gun itself did not fail and the manufacturer did not provide the riser apparatus, because there were triable issues in regard to defects in the warnings. *Id.* at 1236. Like the fire department, the Navy did not modify the evaporator except to insulate it as expected by Griscom Russell. Like the fire fighter, Simonetta was injured. Like Stang, Viad may have liability and is not entitled to summary judgment on the strict liability claim.

¶21 The "raw material supplier defense" does not insulate Viad. *Kealoha v. E.I. DuPont De Nemours & Co.*, 82 F.3d 894, 895 (9th Cir. 1996) (Teflon was incorporated into temporomandibular joint (TMJ) implants, which later failed.). Unlike *Kealoha*, the evaporator was not a "raw material" used in a defective end product. *Id.* at 899. The evaporator was an end product.

¶22 Viad cites to decisions from other jurisdictions to suggest that the trend of decisions favors a finding that manufacturers in Griscom Russell's position do not have a duty to warn. However, these cases are neither dispositive nor persuasive. *See Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376 (1st Cir. 2000) (component part manufacturer had no duty to warn when product became dangerous due to integration into larger, allegedly defective system); *Baughman v. Gen. Motors Corp.*, 780 F.2d 1131 (4th Cir. 1986) (no duty to warn of dangers from a nonstandard replacement part); *Garman v. Magic Chef, Inc.*, 117 Cal. App. 3d 634, 173 Cal. Rptr. 20 (1981) (no duty to warn when stove caused gas explosion due to a propane leak from a wholly unrelated product in the vicinity); *Blackwell v. Phelps Dodge Corp.*, 157 Cal. App. 3d 372, 372-73, 203 Cal. Rptr. 706 (1984) (defendant did not own or lease a tanker car so had no authority to add warnings and could not be held liable for failure to warn); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 591 N.E.2d 222, 582 N.Y.S.2d 373 (1992) (no duty of manufacturer of a sound tire to warn of dangers of using it with another manufacturer's defective rim assembly where the rim was one of many that could have been used and tire manufacturer had no knowledge of user's choice of rim); *Cleary v. Reliance Fuel Oil Assocs., Inc.*, 17 A.D.3d 503, 793 N.Y.S.2d 468, *aff'd*, 5 N.Y.3d 859, 840 N.E.2d 1024, 807 N.Y.S.2d 11 (2005) (hot water heater manufacturer not liable for failure to warn of danger caused by aquastat manufactured by another corporation and provided by a third corporation with another component).

¶23 The cases cited by Simonetta are equally unhelpful in the determination of this issue of first impression. *Lunsford*, 125 Wn. App. at 793 (duty to warn applies to

child exposed to asbestos dust from father's clothing); *Parkins v. Van Doren Sales, Inc.*, 45 Wn. App. 19, 724 P.2d 389 (1986) (defendant had duty to warn of dangers created when components were assembled); *Berkowitz v. A.C.&S., Inc.*, 288 A.D.2d 148, 733 N.Y.S.2d 410 (2001) (denial of summary judgment on similar case but with little analysis); *Chicano v. Gen. Elec. Co.*, 2004 U.S. Dist. LEXIS 20330 (E.D. Pa. 2004) (denial of summary judgment on factually similar situation but unpublished and based on Pennsylvania's component manufacturer liability test); *Olivo v. Owens-Illinois, Inc.*, 186 N.J. 394, 895 A.2d 1143 (2006) (factually similar but defendant is landowner, not product manufacturer).

¶24 *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977), provides insight into Washington's previous analysis of third party product liability. *Teagle* involved a strict liability suit for failure to warn of potential hazards resulting from the use of a metal and glass flowrator to measure ammonia. The flowrator required the use of third party manufactured "O-rings" to seal the open ends of the glass tube component. The manufacturer knew that Viton O-rings would harden and disintegrate when used with ammonia. Despite this knowledge, Fischer & Porter did not warn purchasers of the potential danger in using Viton O-rings but did recommend the use of Buna O-rings. *Id.* at 153-54. The Supreme Court of Washington found this solution inadequate. "It [Fischer & Porter] did not warn of the dangers which could result from using Viton O-rings with ammonia. The lack of this warning, by itself, would render the flowrator unsafe." *Id.* at 156. The court further stated that appellant was not absolved of its duty to warn customers who measure ammonia that Viton O-rings should not be used with the flowrator. *Id.*

¶25 The factual differences between *Teagle* and the present case render the precedent merely persuasive because the harm from the flowrator stemmed from the failure that occurred when the product exploded. In contrast, the evaporator functioned as designed yet caused

harm through the release of hazardous particles. The Fifth Circuit encountered a similar scenario in *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571 (5th Cir. 1979). A motorcycle was tipped over while its fuel switch was in the "on" position, allowing gasoline to leak and ignite on a nearby pilot light. *Id.* The jurors found no design defect but that Kawasaki breached its duty to warn about the danger of gasoline leakage when the fuel switch was in the "on" position. *Id.* at 572. The court found these two determinations consistent because

> [t]he jury . . . could have meant that the motorcycle was not defective in the sense that there was something wrong with it that caused it to be unfit or unsuited for the purpose intended, but that defendants should have made greater efforts to warn users of the potential danger from failing to turn the fuel switch to the off position. This failure to warn is sufficient to hold Kawasaki liable under both negligence and strict liability theories.

*Id.* Like the present case, the motorcycle was not dangerous because of product failure but because its design required the use of a hazardous substance that was released during normal use. The gasoline fumes, not the motorcycle, actually caused the explosion which led to the harm. Kawasaki was required to warn about the hazards of gasoline leakage despite the fact that the company did not manufacture or supply the gasoline. *Id.* at 572-73. As in most vehicles, gasoline was an integral addition that rendered the product dangerous without an adequate warning about the hazards that can result from its use in the motorcycle as designed. *Id.* Similarly, the design of the evaporator required the use of insulation which would release a hazardous substance upon proper use.

¶26 We hold that when a product requires the use of another product and the two together cause a release of a hazardous substance, the manufacturer has a duty to warn about the inherent dangers. Griscom Russell had a duty to warn about the dangers of respirable asbestos released

during the reasonable use of its product.[3] As a result, we reverse the summary judgment and remand the case for further proceedings.

¶27 Finally, we note that we are not finding that Viad was liable for negligence or strict liability as this is for the trial court to decide upon remand. We merely determine that based on the record presented, there was a duty to warn under both theories.

COLEMAN and BAKER, JJ., concur.

Reconsideration denied March 23, 2007.

Review granted at 162 Wn.2d 1011 (2008).

---

[3] The parties have not asked us to address whether any temporal limitations may apply to a retroactive application of the duty to warn.